UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES HULCE,

        Plaintiff,

  v.

LUSTRE-CAL CORPORATION,

        Defendant.

Case No. 20-cv-775-pp

---

**ORDER DEFERRING RULING ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER FED. R. CIV. P. 12(B)(1) (DKT. NO. 12), DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6) (DKT. NO. 12), REQUIRING PLAINTIFF TO AMEND COMPLAINT AND SETTING BRIEFING SCHEDULE**

---

**I.**     **Introduction**

On May 22, 2020, the plaintiff filed a class action complaint against the defendant alleging consumer-privacy violations under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227. Dkt. No. 1 at ¶1. The plaintiff claims that the defendant sent unsolicited advertisements to the plaintiff's facsimile machine as well as to those of other putative class members. Id. at ¶2.

On August 24, 2020, the defendant filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 12. The defendant argues that the plaintiff lacks standing to bring this claim and has failed to state a claim upon which relief may be granted. Dkt. No. 13 at 1-2.

The defendant asks that in the event the court denies the motion to dismiss, the plaintiff be limited to jurisdictional discovery. Id. at 13.

## II. Facts

The plaintiff is resident of Wisconsin. Dkt. No. 1 at ¶5. The defendant is a California corporation with its principal place of business located in California. Id. at ¶6. The plaintiff alleges that the defendant "sent unsolicited facsimile advertisements promoting their face shield services to putative class members." Id. at ¶2.

According to the plaintiff, the defendant sells medical equipment through methods including facsimile advertisements. Id. at ¶¶12-13. The plaintiff alleges that the defendant sent to the plaintiff by fax an advertisement for face shields; the plaintiff has a facsimile machine under his own name. Id. at ¶¶16-17. The plaintiff asserts that he had no prior business relationship with the defendant and neither consented to receiving faxes from the defendant nor solicited its business. Id. at ¶¶14, 20-22. The alleged fax advertisement lists the URL for the defendant's website and its logo, as well as its phone number, fax line and email address. Id. at ¶19. The plaintiff contends that the fax "occupied Plaintiff's fax line, making it unavailable for legitimate communications." Id. at ¶23.

The plaintiff filed the case as a Rule 23 class action. Id. at ¶25. The complaint proposes the following definition for the class:

> All persons and entities whom: (a) Defendant and/or a third party acting on Defendant's behalf sent one or more faxes; (b) advertising Defendant's goods or services (d) [sic] at any time in the period that

begins four years before the date of filing this complaint and ends at the date of trial.

Id. at ¶26.

The plaintiff seeks damages under the TCPA, 47 U.S.C. §227(b)(1)(C). Id. at ¶39. Damages for violations of the TCPA start at $500 and increase to $1,500 if the violation was willful or knowing. 47 U.S.C. 227(b)(3). The plaintiff also seeks injunctive relief prohibiting the defendant and "all other person who are in active concert or participation with it" from sending fax advertisements.

### III. Jurisdiction

The court has federal question jurisdiction under 28 U.S.C. §1331 because the plaintiff brings his claim under federal law.

### IV. Analysis

A. Standing

1. *Applicable Law*

Article III standing is an "essential component of Article III's case-or-controversy requirement," and therefore a "threshold jurisdictional question." Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443 (7th Cir. 2009) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." Id. "Standing is an element of subject-matter jurisdiction in a federal civil

action . . . ." Moore v. Wells Fargo Bank, N.A., 908 F.3d 1050, 1057 (7th Cir. 2018).

> The "irreducible constitutional minimum of standing contains three requirements. *Lujan v. Defenders of Wildlife*, [504 U.S.], at 560 . . . First and foremost, there must be (and ultimately proved) an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, [495 U.S. 149], at 149, 155 [1990] (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101-102 . . . (1983)). Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 . . . (1976). And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. *Id.*, at 45-46 . . .; see also *Warth v. Seldin*, 422 U.S. 490, 505 . . . (1975). This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence. See *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 . . . (1990).

Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102-104 (1998).

Regarding the "injury in fact" leg of the triad, the injury must be "particularized," such that it "affect[s] the plaintiff in a personal and individual way." Spokeo, Inc. v. Robins, ___ U.S. ___, 136 S.Ct. 1540, 1548 (2016) (citations omitted). The injury also must be "concrete"—it must be "real," not "abstract." Id.

The defendant raises a factual attack against standing. "[W]hen considering a motion that launches a factual attack against jurisdiction, "'[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact such subject matter jurisdiction exists.'" *Evers v. Astrue,* 536 F.3d 651, 656-57 (7th Cir. 2008) . . . ." Apex Digital 572 F.3d at

4

444. Unlike a facial attack which "tests whether the allegations, taken as true, support an inference that the elements of standing exist," a factual attack tests "the existence of jurisdictional facts underlying the allegations." Bazile v. Finance System of Green Bay, Inc., 983 F.3d 274, 279 (7th Cir. 2020). When the complaint faces a factual attack, "the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." Id. (citing Venezuela v. Helmerich * Payne Int'l Drilling Co., ___ U.S. ___, 137 S.Ct. 1312, 1316 (2017)).

        2.    *Parties' Arguments*

The defendant asserts that the plaintiff received the advertisement at fax number (262) 293-6698, a Voice over Internet Protocol (VoIP) provided through a carrier called Bandwith.com. Dkt. No. 13 at 3. According to the defendant, Bandwith.com offers virtual phone numbers to power Google Voice. Id. at 4. The defendant asserts that "Google Voice numbers are nearly impossible to use with traditional 'telephone facsimile machines' because Google Voice is a VoIP which does not integrate with a traditional telephone fax machine's analog network." Id. (citing Dkt. No. 15 at ¶6). From this, the defendant concludes that the plaintiff does not have a telephone fax machine connected to a printer; the defendant asserts that the plaintiff has an online fax system that receives faxes digitally. Id. at 3-4. The defendant asserts that the plaintiff has not suffered a concrete and particularized injury-in-fact because he received the "fax" by email over the internet rather than through a "telephone facsimile machine." Dkt. No. 13 at 1, 6.

5

In support of its motion, the defendant relied on the language and intent of the TCPA as well as recent clarifications issued by the Federal Communications Commission. The defendant asserted that in 2019, the FCC provided guidance on the TCPA through a declaratory ruling. Id. at 6-7 (citing In re Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling et al., DA 19-1247, 2019 WL 6712128 (F.C.C. December 9, 2019)). The defendant attached the ruling to its motion; the ruling states that in 2003, the FCC "made clear that the TCPA's prohibition [on using a telephone fax to send an unsolicited advertisement] does not extend to facsimile messages 'sent as email over the internet.'" Id. at ¶5 (citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket 02-278, 18 FCC Rcd 14014, 14133, para. 200 (2003) (2003 TCPA Order)).[1]

The plaintiff responds that he "received the facsimile advertisement referenced in the complaint through a traditional telephone fax machine." Dkt. No. 18 at 2. The response includes a photo of this "telephone fax machine." Id. The plaintiff further argues that "[t]raditional telephone fax machines can be connected to Google Voice, or any other telephone service provider, using VoIP technology through the use of an analog telephone adapter device." Id. In his

---

[1] At a telephone hearing on May 18, 2021, defense counsel advised the court and the parties that the FCC since had issued another declaratory ruling. On September 4, 2020, the Chief of the Consumer and Governmental Affairs Bureau of the FCC issued In re Joseph T. Ryerson & Son, Inc. Petition for Declaratory Ruling, DA 20-1038, 2020 WL 5362216 (F.C.C. Sept. 4, 2020). The court anticipates that the parties will address the binding nature of this ruling in their briefing, the schedule for which is laid out at the end of this order.

6

attached declaration, the plaintiff stated that he was using such an adapter device, "an Obihai Obi212, which provides analog telephone jacks for interfacing with standard telephone instruments." Dkt. No. 18-2 at ¶5. He says that using this device with his traditional phone line saves him money on his phone bills. Id. at ¶6.

The plaintiff argues that he received the advertisement over a telephone fax machine, making the fax line "unavailable for legitimate communications." Dkt. No. 18 at 3. He also asserts that the advertisement was received in a manner that caused him to incur the loss of paper and toner ink.[2] Id. at 2.

The defendant replies that in his opposition brief, the plaintiff has raised new facts that were not alleged in the complaint. Dkt. No. 19 at 1. The defendant reads the plaintiff's opposition brief and declaration as admissions that the plaintiff did not receive the advertisement over a "regular telephone line." Id. at 2. It asserts that because the plaintiff "attaches a converter to his Google VoIP called Obihai Obe 212, which he then attaches to his Lexmark machine," "[t]his cannot be characterized as a regular telephone line." Id. at 6.

Reiterating the Amerifactors ruling, the defendant argues that the plaintiff could have blocked unwanted communications, something one cannot do on a traditional telephone fax and a harm the FCC explained that the TCPA was designed to prevent. Id. at 3. The defendant asserts that the plaintiff has

---

[2] The plaintiff did not allege in the complaint that receipt of the unsolicited fax advertisement caused him to incur the loss of paper and toner ink. That allegation appears in a declaration by the plaintiff filed as an exhibit to his brief in opposition to the motion to dismiss. Dkt. No. 18-2 at 2.

not alleged that he missed some other fax because of his fax machine being tied up with the ad in question, and thus that he alleges only a hypothetical injury. Id. at 4-5.

       3.   *Discussion*

In his opposition brief and declaration, the plaintiff has alleged two injuries; he has asserted that receiving the unsolicited fax tied up his line so that he could not receive other faxes and he has alleged that he had to use printer paper and toner as a result of receiving the unsolicited fax.

The Seventh Circuit has held that use of paper and toner is a "concrete" injury. Craftwood II, Inc. v. Generac Power Systems, Inc., 920 F.3d 479, 481 (7th Cir. 2019) ("printing the faxes used paper and toner, which are costly."). The court has observed that under the TCPA, "injuries may [be] slight, but an 'identifiable trifle' suffices." Id. (citing United States v. SCRAP, 412 U.S. 669, 689 & n.14 (1973)). As the defendant correctly points out, however, the *complaint* does not allege this injury.

The plaintiff did, however, allege the first type of injury in the complaint. Paragraph 23 of the complaint states that the unsolicited fax "occupied Plaintiff's fax line, making it unavailable for legitimate communications." Dkt. No. 1 at ¶23. The defendant argues that the plaintiff has not alleged that he missed a particular fax and thus that this injury is hypothetical. At the pleading stage, the court finds that it is enough that the plaintiff has alleged that receiving the fax made his fax machine unavailable to receive other faxes.

8

The defendant relies heavily on the Amerifactors ruling to argue that the plaintiff cannot allege concrete injuries because of the type of fax machine he has, asserting that the Amerifactors ruling expressly excludes from TCPA coverage the kind of fax the plaintiff has and that the reason for that exclusion is because the kind of fax machine the plaintiff has does not expose the plaintiff to the types of injuries the plaintiff alleges. The plaintiff disagrees, arguing that he has a regular telephone fax line and that the adapter he uses is simply a device that saves him money on his phone bills. There is a clear factual dispute on this issue, one that the court cannot resolve without some discovery.

There is also a legal question: whether this court is bound by the Amerifactors ruling. In Mussat v. IQVIA Inc., No. 17 C 8841, 2020 WL 5994468, *3-4 (N.D. Illinois Oct. 9, 2020), the district court for the Northern District of Illinois conducted a detailed analysis of whether the ruling was final, and thus binding on the court, and came to the conclusion that it had insufficient information to answer that question. Cf. True Health Chiropractic Inc. v. McKesson Corporation, Case No. 13-cv-02219, 2020 WL 7664484, *4-8 (N.D. Cal. Dec. 24, 2020) (finding that Amerifactors was a final, binding order for the purposes of the Hobbs Act under Ninth Circuit law).

The court is going to require the plaintiff to amend the complaint to allege all the injuries he says that he suffered, including expenditure of paper and ink. The court then will give the parties the opportunity to brief the question of whether Amerifactors is binding on the court. If the court concludes

9

that Amerifactors is binding, it will give the parties the opportunity to conduct limited discovery regarding the type of fax machine the plaintiff has.

      B.     <u>Failure to State a Claim & Limited Discovery</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); <u>Gibson v. City of Chi.</u>, 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. <u>AnchorBank, FSB v. Hofer</u>, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). In this context, "plausible," as opposed to "merely conceivable or speculative," means that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." <u>Carlson v. CSX Transp., Inc.</u>, 758 F.3d 819, 826-27 (7th Cir. 2014) (quoting <u>Swanson v. Citibank, N.A.</u>, 614 F.3d 400, 404-05 (7th Cir. 2010)). "[T]he proper question to ask is still could these things have happened, not did they happen." <u>Id.</u> at 827 (internal quotation and citation omitted). The plaintiff "need not 'show' anything to

survive a motion under Rule 12(b)(6)—he need only allege." Brown v. Budz, 398 F.3d 904, 914 (7th Cir. 2005).

Under the TCPA, 47 U.S.C. §227(b)(1)(C), it is "unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." A "facsimile machine" is defined, for the receiver's purposes, as "equipment which has the capacity to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. §227(a)(3).

The defendant raises two arguments as to why the court should dismiss the plaintiff's claims under Rule 12(b)(6). First, the defendant argues that the plaintiff received the advertisement "as email over the internet," which the defendant asserts is excluded from the TCPA under the Amerifactors ruling and the 2003 TCPA Order. Dkt. No. 13 at 10. Second, the defendant argues that the plaintiff lacks prudential standing because he failed to allege that he received the advertisement on a "'telephone facsimile machine.'" Id.

The court already has explained that there is a question whether Amerifactors is binding on the court, as well as a factual dispute about whether the plaintiff has the kind of fax machine that Amerifactors excluded from coverage by the TCPA.

As it already has said, the court will allow the parties to brief the court on the binding nature of Amerifactors. Even if the court determines that Amerifactors applies, however, a motion to dismiss is not the proper vehicle to

11

decide a factual dispute. For a motion to dismiss, the court must accept as true the plaintiff's allegation that the defendant sent an unsolicited fax advertisement to the plaintiff's fax machine. Arguments regarding the type of machine, the classification of the receiver or the technology's relation to the congressional intent behind the statute are relevant to the question of whether the court has subject-matter jurisdiction, not to the question of whether the plaintiff has stated a claim. The court will deny without prejudice the defendant's motion to dismiss for failure to state a claim.

**V.   Conclusion**

The court **DENIES with prejudice** the defendant's motion to dismiss. Dkt. No. 12.

The court **ORDERS** that by the end of the day on **June 4, 2021**, the plaintiff must file an amended complaint describing all the injuries he allegedly suffered because of receiving the unsolicited fax advertisement.

The court **ORDERS** that by the end of the day on **June 25, 2021**, the parties must file simultaneous briefs on the question of whether the Amerifactors and Ryerson rulings are binding on this court.

The court **ORDERS** that by the end of the day on **July 16, 2021**, the parties may file simultaneous response briefs to the opposing party's position on whether the Amerifactors and Ryerson rulings are binding on the court.

Once the court has issued a ruling on the binding nature of the Amerifactors and Ryerson rulings, it will determine whether to allow

jurisdictional discovery and, if it concludes such discovery is necessary, will set a schedule for conducting such discovery.

Dated in Milwaukee, Wisconsin this 20th day of May, 2021.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**