UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

JAMES HULCE on behalf of himself and others similarly situated,

Plaintiff,

v.

LUSTRE-CAL CORPORATION,

Defendant.

Case No.: 2020-CV-775

---

**DEFENDANT'S BRIEF REGARDING WHETHER *AMERIFACTORS* AND *RYERSON* ARE BINDING ON THIS COURT**

---

## INTRODUCTION

The Federal Communications Commission's ("FCC") rulings in *Amerifactors* and *Ryerson* constitute binding authority and must be followed. Further, both cases referenced by this Court, *True Health Chiropractic Inc. v. McKesson Corp*., No. 13-cv-02219-HSG, 2020 U.S. Dist. LEXIS 242297, at *18 (N.D. Cal. Dec. 24, 2020) and *Mussat v. IQVIA Inc*., No. 17 C 8841, 2020 U.S. Dist. LEXIS 187976 (N.D. Ill. Oct. 9, 2020), support Defendant's position that parties must first address Plaintiff's lack of Article III standing because Plaintiff did not receive an unsolicited fax advertisement on a "telephone facsimile machine." Aside from *True Health* and *Mussat*, the law requires deference to the FCC's rulings in *Amerifactors* and *Ryerson*, so that we must first address Plaintiff's lack of Article III standing before this litigation proceeds further.

## PROCEDURAL BACKGROUND

Lustre-Cal's motion to dismiss argues that Plaintiff lacked standing because he received the fax by email over the internet. Thus, he did not suffer a concrete and particularized "injury-in-fact" which is required to establish Article III standing.

In support of its motion, Lustre-Cal relied on the language and intent of the TCPA as well as rulings from the FCC. Lustre-Cal cited the FCC's ruling of *In re Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling et al*., DA 19-1247, 2019 FCC LEXIS 3608, 2019 WL 6712128 (F.C.C. December 9, 2019)). *See* Ex. A. *Amerifactors* held that the FCC's previous 2003 ruling "made clear that the TCPA's prohibition [on using a telephone fax to send an unsolicited advertisement] does not extend to facsimile messages 'sent as email over the internet.'" *Id*. at ¶5 (citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket 02-278, 18 FCC Rcd 14014, 14133, para. 200 (2003) (2003 TCPA ruling)).

Plaintiff argued that he received the fax at issue on a telephone facsimile machine and suffered the harm contemplated by the TCPA, and relied on the harms addressed in *Amerifactors*, specifically that the "fax occupied Plaintiff's fax line, making it unavailable for legitimate communications". (ECF No. 18 at p. 3.) Notably, Plaintiff never argued that *Amerifactors* was inapplicable.

At the hearing, Counsel for Lustre-Cal informed the Court the new FCC ruling in *In re Joseph T. Ryerson & Son, Inc. Petition for Declaratory Ruling*, DA 20-1038, 2020 FCC LEXIS 3385, 2020 WL 5362216 (F.C.C. Sept. 4, 2020). *See* Ex. B.

The Court denied Lustre-Cal's Motion to Dismiss without prejudice, but the Court ordered the Plaintiff file an amended complaint, and ordered the parties to file simultaneous briefs on whether the FCC's rulings in *Amerifactors* and *Ryerson* are binding on the Court. The Court cited *True Health Chiropractic Inc. v. McKesson Corp*., No. 13-cv-02219-HSG, 2020 U.S. Dist. LEXIS

242297, at *18 (N.D. Cal. Dec. 24, 2020) and *Mussat v. IQVIA Inc.*, No. 17 C 8841, 2020 U.S. Dist. LEXIS 187976 (N.D. Ill. Oct. 9, 2020) to explain how there appears to be a conflict among the courts regarding whether the FCC's decision *Amerifactors* and *Ryerson* are binding on this Court.

## ARGUMENT

### I. Both *True Health* and *Mussat* support Lustre-Cal's position.

#### A. *True Health* held that the FCC's ruling in *Amerifactors* is binding authority pursuant to the Hobbs Act.

*True Health* held:

> Here, **the Court finds that *Amerifactors* is a final, binding order for purposes of the Hobbs Act.** The Bureau acted "pursuant to delegated authority" to issue a declaratory ruling and the ruling became effective "upon release." *See* 47 C.F.R. § 1.2; 47 CFR § 1.102 (b)(1). **The pending petition for reconsideration before the FCC does not affect the order's finality as it applies to Defendants' potential liability under the TCPA. See 47 C.F.R. §1.102 (b)(2)**; *Comm. to Save WEAM v. Fed. Commc'ns Comm'n*, 808 F.2d 113, 119, 257 U.S. App. D.C. 218 (D.C. Cir. 1986) (holding that an application for FCC review could not preclude an order from taking effect unless the FCC decided to stay its effectiveness). And because *Amerifactors* establishes that those who received faxes via an online fax service have different legal rights than those who received faxes on a telephone facsimile machine, it clearly "determines rights and gives rights to legal consequences." *See Hamilton*, 224 F.3d at 1055. **Moreover, Plaintiffs' request that the Court diverge from *Amerifactors'* fundamental holding, that online fax services do not fall under the TCPA, would "raise the same issues . . . as the declaratory ruling" and is thus precluded by Ninth Circuit precedent.** *See Wilson*, 87 F.3d at 399.

*True Health*, 2020 U.S. Dist. LEXIS 242297, at *18-19 (emphasis added).

*True Health* therefore expressly explains with citations to ample authority why *Amerifactors* is a final ruling from the FCC and so it qualifies as binding authority pursuant to the Hobbs Act.

**B. *Mussat* supports Lustre-Cal's position that the Court should first determine whether Plaintiff has Article II standing.**

This Court aptly noted in its ruling on Lustre-Cal's motion to dismiss that *Mussat* "came to the conclusion that [the Court] had insufficient information to answer" the question of whether *Amerifactors* was binding on the Court. (ECF No. 22 at p. 9.) *Mussat* did not and could not reference the analysis from *True Health* because the *Mussat* decision was issued approximately two months before *True Health*. *See Mussat,* 2020 U.S. Dist. LEXIS 187976 (N.D. Ill. Oct. 9, 2020); *compare to True Health Chiropractic Inc.*, 2020 U.S. Dist. LEXIS 242297 (N.D. Cal. Dec. 24, 2020). Therefore, *Mussat* did not have the benefit of the analysis in *True Health* which explains with citations to applicable authority why *Amerifactors* is binding. *True Health*, 2020 U.S. Dist. LEXIS 242297, at *18-19.

The subsequent procedural history in *Mussat* provides a clearer picture of that Court's ultimate conclusion. After the Court issued its opinion on October 9, 2020, the defendant moved to stay the litigation pending it petition for *certiorari* to the U.S. Supreme Court on the issue of whether the Court had personal jurisdiction over out-of-state putative class members. *Mussat*, No. 17 C 8841, Dkt No. 129 (N.D. Ill. Oct. 29, 2020). Subsequently, the motion was rendered moot because the U.S. Supreme Court denied defendant's petition, so the Court ordered the parties to file a joint status report. *Mussat,* Dkt No. 137 (Jan. 13, 2021). The parties filed a contested joint status report wherein plaintiff advocated for the litigation to advance to discovery and defendant argued that the parties should brief whether plaintiff had Article III standing. *Mussat*, Dkt No. 138 (Jan. 21, 2021). The Court agreed with defendant that discovery "would be premature" and instead ordered the parties to brief the issue of whether plaintiff had Article III standing. *Mussat*, Dkt No. 139 (Jan. 25, 2021). The plaintiff thereafter filed a stipulation to dismiss within two weeks of the Court's order. *Mussat*, Dkt No. 140 (Feb. 10, 2021).

As a result, *Mussat* supports the position that the parties should first address the issue of whether Plaintiff has Article III standing. *See also, Daisy, Inc. v. Mobile Mini, Inc.,* 489 F. Supp. 3d 1287, 1297 (M.D. Fla. 2020)(after applying *Amerifactors*, history, and congressional judgment to plaintiff's Daisy's alleged harm for one minute of wasted time to delete an emailed fax, the court concluded "Daisy's alleged harm does not satisfy Article III's injury-in-fact requirement. Because Daisy has no standing, the Court lacks jurisdiction and must dismiss without prejudice.")

## II. Aside from *Mussat* and *True Health*, The Law Requires Deference To The FCC's Rulings in *Amerifactors* and *Ryerson*.

### A. The Hobbs Act requires deference to the FCC's Rulings.

In 1991, Congress passed the Telephone Consumer Protection Act ("TCPA"), granting the FCC the authority to "prescribe regulations to implement" its requirements. 47 U.S.C. § 227(b)(2). Further, "[t]he Communications Act, which the TCPA amended, provides that any 'proceeding to enjoin, set aside, annul, or suspend any order of the [FCC] must be brought under the Hobbs Act" and "[t]he Hobbs Act provides the federal courts of appeals with 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity' of FCC orders." *Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017)(citing 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1)). In passing the Communications Act, Congress "delegated to the [FCC] the authority to 'execute and enforce' the Communications Act and to prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of the Act," and to "promulgate binding legal rules." *See Nat'l Cable & Telecom. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 980, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005); *see also City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 312, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013) (Breyer, J., concurring). Pursuant to that authority, the FCC has provided for the disposition of "declaratory rulings," meant to "terminat[e] a controversy or remov[e] uncertainty." 47 C.F.R. § 1.2(a); *see also* 5 U.S.C. 554(e) (granting

authority to agencies to "issue a declaratory order to terminate a controversy or remove uncertainty.").

The FCC has delegated authority to its constituent bureaus and offices to docket petitions for declaratory rulings, post notice of and seek comment on them, and issue final orders disposing of them. 47 C.F.R. § 1.2(b). These orders then become final and effective "upon release." 47 CFR § 1.102(b)(1). Parties may apply for review of these decisions, but the decisions remain in effect unless the FCC, "in its discretion," issues a stay pending review. § 1.102(b)(2); § 1.115.

The Hobbs Act limits judicial review of FCC "final orders" to the Courts of Appeals, provided that complaints are filed within 60 days of an order's publication. *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a) ("Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter...shall be brought as provided by and in the manner prescribed in [the Hobbs Act]."). However, parties who were "not a party to the proceedings resulting" in the order may file a petition for reconsideration within the agency itself prior to seeking judicial review. 47 U.S.C. 405(a); 47 C.F.R. § 1.106(m); *CE Design Ltd. v. Prism Bus. Media, Inc.*, No. 07 C 5838, 2009 U.S. Dist. LEXIS 70712, at *20 (N.D. Ill. Aug. 12, 2009); *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 400 (9th Cir. 1996). 47 U.S.C. § 405(a); *see WWC Holding Co., Inc. v. Sopkin*, 488 F.3d 1262, 1273 (10th Cir. 2007) (recognizing the Act's prescribed procedure for challenging FCC rulings and noting that "we must assume the FCC's order . .. is valid under the Telecommunications Act" unless that procedure has been invoked).

The Hobbs Act has been consistently applied to FCC's rulings interpreting the TCPA by both the Seventh Circuit and District Courts within it. *Blow*, 855 F.3d at 803; *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446-51 (7th Cir. 2010); *Gadelhak v. AT&T Services*, No. 17-cv-01559, 2019 U.S. Dist. LEXIS 55200, at *9 (N.D. Ill. Mar. 29, 2019); *Hassert v. Navient*

*Solutions, Inc.*, 232 F. Supp. 3d 1049, 1051 (W.D. Wis. 2017); *Balschmiter v. TD Auto Finance LLC*, 303 F.R.D. 508, 530 (E.D. Wis. 2014); *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 819 (N.D. Ill. 2014) .

The seminal Seventh Circuit decision applying the Hobbs Act to a challenge of an FCC's interpretation of the TCPA is *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446-51 (7th Cir. 2010). The defendant there urged the district court "to ignore the FCC orders" establishing a defense to TCPA liability "because, according to it, Congress did not authorize the FCC to establish an [existing business relationship] defense." *Id*. at 445. The Seventh Circuit held that the Hobbs Act precluded the defendant's challenge to the validity of the FCC rule, explaining the fact that the "challenge to the FCC's [interpretation of the TCPA] arises in a dispute between private parties makes no difference—the Hobbs Act's jurisdictional limitations are 'equally applicable whether [a party] wants to challenge the rule directly . . . or indirectly, by suing someone who can be expected to set up the rule as a defense in the suit.'" *Id*. at 448 (quoting *City of Peoria v. Gen. Elec. Cablevision Corp.*, 690 F.2d 116, 120 (7th Cir. 1982)) (other citations omitted). Under *CE Design's* holding, the Hobbs Act prevents this Court from entertaining any argument from the Plaintiff that the FCC ruling at issue "conflicts with the TCPA's plain language." *Id*. at 447 (characterizing and rejecting argument).

**B. The FCC's Rulings in *Amerifactors* and *Ryerson* are binding.**

In 2017 a petitioner (Amerifactors) sought a declaratory ruling from the FCC to clarify whether faxes received by "online fax services" are covered under the TCPA. *See Amerifactors*, 34 FCC Rcd 11950, 2019 FCC LEXIS 3608, 2019 WL 6712128, ¶ 2 (Dec. 9, 2019). After receiving comments from over twenty-five different people and entities, *Amerifactors* held that an "online fax service" is not a "telephone facsimile machine" under the TCPA. *See generally id*. Specifically, *Amerifactors* held that "an online fax service that effectively receives faxes 'sent as

email over the Internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper' is not a 'telephone facsimile machine' and thus falls outside the scope of the statutory prohibition." 2019 FCC LEXIS 3608, at ¶ 3

The FCC[1] reached its conclusion in *Amerifactors* by examining the plain language of the TCPA and considering the specific harms Congress sought to address. The FCC's analysis started with an online fax service as "a cloud-based service consisting of a fax server or similar device that is used to send or receive documents, images and/or electronic files in digital format over telecommunications facilities that allows users to access faxes the same way that they do email: by logging into a server over the Internet or by receiving a pdf attachment [as] an email." 2019 FCC LEXIS 3608, at ¶ 2. It likened online fax services to "faxes sent to a "computer" or "other device," rather than a "telephone facsimile machine." 2019 FCC LEXIS 3608, at ¶ 13. *Amerifactors* also emphasized that "an online fax service cannot itself print a fax—the user of an online fax service must connect his or her own equipment in order to do so." 2019 FCC LEXIS 3608, at ¶ 11. It further determined that online fax services did not pose the specific harms Congress addressed in the TCPA, namely "advertiser cost-shifting" from the use of paper and ink

---

[1] The FCC has delegated to the Consumer and Governmental Affairs Bureau "matters pertaining to consumers and governmental affairs. This includes policy development and coordination as well as adjudication and rulemaking." 47 C.F.R. § 0.141 (2011) (emphasis added), pursuant to authority granted in 47 U.S.C. § 155(c)(3) ("Any order, decision, report or action made or taken pursuant to any such delegation [by the Commission], unless reviewed [by the Commission] as provided in paragraph (4) of this subsection, shall have the same force and effect, and shall be made, evidenced, and enforced in the same manner, as orders, decision, reports, or other actions of the Commission."). When acting pursuant to this delegation, the actions of the Consumer and Governmental Affairs Bureau are entitled to the same weight as the actions of the Commission itself. "When, as here, Congress has expressly permitted delegation of authority by statute, *see* 47 U.S.C. § 155(c), and the agency delegates authority to a subdivision, 'the decision of the subdivision is entitled to the same degree of deference as if it were made by the agency itself." *Indiana Bell Telephone Co. v. McCarty*, 362 F.3d 378, 387 (7th Cir. en banc 2004) (citations omitted), quoted with approval in *MCI Communications Corp. v. Ohio Bell Telephone Co.*, 376 F.3d 539, 550 (6th Cir. 2004).

and "occupying the recipient's fax machine so it is unavailable for other transmissions." 2019 FCC LEXIS 3608, at ¶ 11-13.

In short, *Amerifactors* was promulgated pursuant to statutory authority and its provisions are entitled to the force and effect of law. *Amerifactors* clarifies the understanding of the Consumer and Governmental Affairs Bureau—the FCC entity charged with day in and day out interpretation and enforcement of the TCPA provisions—of the FCC's 2003 TCPA ruling.

In late 2020, the FCC confirmed its analysis from *Amerifactors* in a new ruling called *In re Joseph T. Ryerson & Son, Inc. Petition for Declaratory Ruling et al*., 35 FCC Rcd 9474, 2020 FCC LEXIS 3385 (F.C.C. September 4, 2020) ("*Ryerson*"). In 2015, Joseph T. Ryerson & Son, Inc. (Ryerson) filed a petition seeking clarification that, among other things, messages that are initiated and received in digital form are not governed by the TCPA. Ryerson contends that such transmissions are more closely analogous to an email than a traditional fax. *Ryerson,* at *1. The Bureau determined that the circumstances were similar to *Amerifactors*, and what was sent was not a fax, so the petition was granted.

The recipient in *Ryerson* used a cloud-based service that allowed the recipients to manage incoming messages as they would manage email. *Ryerson*, at *11. The FCC determined that as in *Amerifactors*, "the document here, which was received by Connector's Office@Hand online service, was 'effectively an email' sent over the Internet by the third-party service and not covered by the TCPA." *Ryerson*, at *12. The FCC reiterated that transmissions that are email do not implicate the harms Congress sought to address in the TCPA, like typing up phone lines and the use of paper, toner, and ink from automatic printing. *Ryerson,* at *13. The FCC also said:

> As the Commission and Bureau have stated previously, the TCPA does not apply to documents that are sent as email over the Internet and received as email. Here, it is undisputed that the document in question was not initially sent as a fax, but was always a digital

> electronic file. Similarly, we disagree with those commenters who argue that the transmissions are TCPA-covered faxes because they were eventually sent to a computer that could print the message.

*Ryerson*, *13-14.

### C. *AMERIFACTORS* AND *RYERSON* ARE ENTITLED TO AT LEAST *CHEVRON* DEFERENCE

Even if *Amerifactors* and *Ryerson* are not binding authority pursuant to the Hobbs Act, *Chevron* deference still requires that the Court apply the rulings here. *Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, No. 1:17-cv-01149-JDB-jay, 2020 U.S. Dist. LEXIS 153181, at *10 (W.D. Tenn. Aug. 24, 2020)(concluding that *Amerifactors* was not a final order subject to the Hobbs Act, but decided that Chevron deference required application of *Amerifactors* to modify the class definition to exclude "any fax(es) sent to an online fax service" because it "is not 'an unsolicited facsimile advertisement' prohibited by the TCPA.").

The Supreme Court has held that *Chevron* deference applies only when a court interprets a rule issued pursuant to an agency's authority to "make rules carrying the force of law." *Gonzales v. Oregon*, 546 U.S. 243, 255, 126 S. Ct. 904, 163 L. Ed. 2d 748 (2006).

In *Chevron U.S.A. Inc. v. Natural Res. Def. Counsel, Inc*., the Supreme Court held that if a statute is silent or ambiguous in a particular respect, a court will defer to an agency's reasonable interpretation of the statute. 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). *Chevron* deference is mandatory when "Congress has expressly or implicitly indicated that it intended an agency to speak with the force of law on a matter, and the agency's position on that matter is reasonable." *Matz v. Household Int'l Tax Reduction Inv. Plan*, 265 F.3d 572, 574 (7th Cir. 2001) (citing *United States v. Mead Corp*., 533 U.S. 218, 229-30, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001)). Even absent explicit rule-making authority, Congress may implicitly confer such authority "when it provides for a relatively formal administrative procedure tending to foster the fairness

and deliberation that should underlie a pronouncement of such force." *Mead*, 533 U.S. at 230. Such formal procedures typically include "notice-and-comment rulemaking or formal adjudication." *Id*. (collecting cases).

The Supreme Court of the United States has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Chevron,* 467 U.S. at 844. In *Chevron*, the Supreme Court set forth a two-step test for judicial review of administrative agency interpretations of federal law. First, the court must determine "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842–43; *Coyomani-Cielo v. Holder*, 758 F.3d 908, 912 (7th Cir. 2014); *see also Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2124-25, 195 L. Ed. 2d 382 (2016) ("At the first step, a court must determine whether Congress has 'directly spoken to the precise question at issue.'"(emphasis added) (quoting *Chevron*, 467 U.S. at 842)). Second, if a statute is silent or ambiguous with respect to the issue at hand, the court must defer to the agency so long as "the agency's answer is based on a permissible construction of the statute." *Id*. at 843. An agency's interpretation is permissible, unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 844; *Bankers Life and Casualty Co. v. United States*, 142 F.3d 973, 983 (7th Cir. 1998); *see also Ass'n of American Railroads v. Surface Transportation Board [STB]*, 162 F.3d 101, 103 (D.C. Cir. 1998) (applying *Chevron* deference to the Board's interpretations of the ICC Termination Act); *see also In re Transcon Lines*, 89 F.3d 559, 566 (9th Cir. 1996) (same).

> Chevron is designed to help courts determine the validity of a challenged agency regulation by determining two things: First, whether Congress expressly or implicitly delegated authority to the agency to fill in any gaps in the statute that the agency administers;

> and second, whether the agency's rule is based on a reasonable construction of that statute.

*CE Design, Ltd.*, 606 F.3d at 447(citing *Chevron*, 467 U.S. at 842-44).

*Chevron* deference should apply in this case. *Accord MCI Telecommunications Corp. v. Ohio Bell Telephone Co.*, 376 F.3d 539, 550 (6th Cir. 2004); *Indiana Bell Telephone Company v McCarty*, 362 F.3d 378, 386 (7th Cir. en banc 2004). First, the TCPA is silent with respect to its application to online fax service. Thus, the intent of Congress on the issue is far from clear. Second, the Bureau's determination that the definition of a "telephone facsimile machine" excludes online fax services is not arbitrary, capricious or manifestly contrary to the statute. Accordingly, the two-prong *Chevron* test has been satisfied and *Amerifactors* and *Ryerson* are entitled to deference.

### D. The TCPA Does Not Speak to Faxes Sent As Email Over the Internet

The TCPA, as amended by the Junk Fax Protection Act, prohibits any person from sending an unsolicited advertisement to a "telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). In relevant part, a "telephone facsimile machine" is defined as "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." *Id*. § 227(a)(3). Because the TCPA in 1991 did not account for or address changes in technology, in 2003, the FCC sought comment on any developing technologies, such as computerized fax servers, that might warrant revisiting the rules set forth above. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 316-317, 2003 FCC LEXIS 3673, *317, 29 Comm. Reg. (P & F) 830 (F.C.C. June 26, 2003). Therefore, the need for comment and analysis of changing technologies demonstrates the ambiguity in the TCPA.

In the case at hand, the case turns on the definition of "telephone facsimile machine", and the Court is required to defer to the FCC's most recent rulings regarding this definition *Amerifactors* and *Ryerson* where, as here, there is no appeal of the FCC's interpretation. See *Blow*

*v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017) (citing *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448-50 (7th Cir. 2010)). After *Amerifactors*, FCC reaffirmed that interpretation—"Further, we reiterate that transmissions that are effectively email do not implicate the consumer harms Congress sought to address in the TCPA, such as tying up phone/fax lines and the unnecessary use of paper and toner/ink from automatic printing." *Ryerson,* at *4.

When exercising *Chevron* deference in the context of interpreting an ambiguous or unclear statute, the agency acts as a congressional proxy. Congress develops the statutory framework and directs the agency to flesh out the operational details, which is exactly what the FCC and the Bureau did here in *Amerifactors* and *Ryerson*. *Bankers Life and Casualty*, 142 F.3d at 980. Congress may delegate to the agency the authority to make the legal interpretations at issue. *Condo v. Sysco Corp.*, 1 F.3d 599, 604 (7th Cir. 1993). This is in part because specialist agencies are more qualified than generalist courts to handle technical matters within their purview. They are the experts. Court second-guessing of administrative decisions typically "'does not make [for] better technical decisions than [those of] agencies.'" *United States v. Baxter Healthcare Corp.*, 901 F.2d 1401, 1407 (7th Cir. 1990) (quoting F. Heffron & N. McFeeley, The Administrative Regulatory Process 314 (1983)).

In addition to the Hobbs Act, *Chevron* deference compels application of *Amerifactors* and *Ryerson* here. In *Leyse v. Clear Channel Broadcasting, Inc.*, 697 F.3d 360 (6th Cir. 2012), amended 545 Appx. 444 (6th Cir. 2013), the court initially granted *Chevron* deference in determining the scope of the TCPA, and on that sole basis affirmed the dismissal of plaintiff's complaint. 697 F.3d at 362, 372-73. In the amended opinion, the Sixth Circuit again applied *Chevron* deference, holding "the FCC decision resulting from that rulemaking is entitled to *Chevron* deference." 545 Appx. at 454. In addition, the amended opinion noted that the Hobbs Act

argument alone was sufficient to affirm the dismissal of the complaint by the district court. 545 Appx. at 458. Under either analysis, however, *Amerifactors* and *Ryerson* apply here.

Congress designated the FCC to interpret the provisions of the TCPA. *See* 47 U.S.C. § 227(b)(2). In any event, this Court's deference to FCC interpretation is not limited solely to "ambiguity" settings. The TCPA does not address online fax services, which did not exist when the Act was passed and which do not present the line tie-up and ink/paper costs associated with the one version of telephone facsimile machine that did exist. The TCPA cannot apply to the technology that did not yet exist at the time, which is why the FCC was given the authority to interpret the TCPA. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172, 209 L.Ed.2d 272, 283 (2021)(rejecting a more expansive reading of automatic telephone dialing system to encompass new technologies because even though "Congress was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition.") In light of that understandable silence, the interpretation of the scope of the Act confirmed in *Amerifactors* and *Ryerson* are entitled to *Chevron* deference.

**CONCLUSION**

Therefore, *Amerifactors* and *Ryerson* are applicable and should be applied in this case, and limited jurisdictional discovery should occur.

Dated this 25th day of June, 2021.

*Electronically signed by Alyssa A. Johnson*

Alyssa A. Johnson, State Bar No. 1086085
Attorneys for Defendant Lustre-Cal Corporation
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue, Suite 2600
Milwaukee, WI 53202
Phone No. 414-276-6464
Fax No. 414-276-9220
E-mail Address(es):
ajohnson@hinshawlaw.com