IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

JAMES HULCE on behalf of himself and
others similarly situated

    Plaintiff,

v.

LUSTRE-CAL CORPORATION

    Defendant.

Case No. 20-cv-775

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM CONCERNING STANDING AND THE APPLICABILITY OF THE CONSUMER AND GOVERNMENTAL AFFAIRS BUREAUS RULINGS IN *AMERIFACTORS* AND *RYERSON***

The Plaintiff received Defendant's unsolicited fax advertisement to his Lexmark fax machine, which is a "telephone facsimile machine" under the TCPA, and not an "online fax service," resulting in the consumption of Plaintiff's paper and fax toner ink, wear and tear to the fax machine's physical components, and the occupation of his phone line. Plaintiff therefore has standing to proceed.

### Plaintiff's Fax Machine

On May 18, 2020, Defendant sent an unsolicited fax advertisement to the Plaintiff. First Amended Complaint (ECF 23) at ¶ 17. Plaintiff received Defendant's unsolicited, fax advertisement on a traditional, Lexmark fax machine, pictured below:



*Id*. at ¶ 23. The fax machine that received the fax advertisement receives faxes on a telephone line, which is the black cable in the lower left of the picture is the telephone line that is connected to the fax machine. *Id*. at ¶ 24.

1

In receiving the Defendant's fax, the Plaintiff's fax machine transcribed the text and images from an electronic signal received over the telephone line onto paper. *Id*. at ¶ 25. In fact, receiving the fax on a telephone line and fax machine required the Plaintiff to incur the loss of ink toner and paper necessary to print the fax. *Id*. at ¶ 26. Plaintiff did not receive Defendant's fax in a manner that allowed the Plaintiff to review, block, or delete it without printing. *Id*. at ¶ 27. Receipt and the printing of the fax also caused wear and tear on the Plaintiff's fax machine. *Id*. at ¶ 28.

The fax occupied Plaintiff's phone line and fax machine, making it unavailable for legitimate communications. *Id*. at ¶ 29. The Plaintiff's VoIP service and telephone line has only one call path. *Id*. at ¶ 30. That means that if the line is occupied by an unwanted communication, such as the Defendant's fax, any other communications cannot be handled simultaneously. *Id*. at ¶ 31. Instead, the caller would receive a message that the subscriber is currently unavailable. *Id*. at ¶ 32.

The Plaintiff did not use an online fax or other cloud-based service to receive the Defendant's fax. *Id*. at ¶ 33. Plaintiff did not receive Defendant's fax as an email or attachment to an email sent over the internet. *Id*. at ¶ 34.

As a result of receiving Defendant's fax to his fax machine, Plaintiff was injured in the form of, among other things, loss of ink toner and paper to print the fax, wear and tear to his fax machine, and the occupation of his fax line making it unavailable for other uses. *Id*. at ¶¶ 23-35.

### *Amerifactors* and *Ryerson*

In *Amerifactors*, the Consumer and Governmental Affairs Bureau (a bureau of the FCC) stated that an "online fax service" is not a "telephone facsimile machine" as defined by 47 U.S.C. § 227(a)(3). *In re Amerifactors Financial Group, LLC Petition for Expedited*

*Declaratory Ruling et al.*, 34 FCC Rcd 11950 (C.G.A.B. Dec. 9, 2019) ("Our clarification is limited to an analysis of online fax services, as informed by the current record, and does not prejudge whether we would arrive at the same conclusion for other types of equipment and services").

An "online fax service" is a service that "hold[s] inbound faxes in digital form on a cloud-based server, where the user accesses the document via the online portal or via an email attachment and has the option to view, delete, or print them as desired." *Id*. at 11953. "Faxes sent to online fax services use paper and ink only when the recipient *chooses* to print it using their own separately provided equipment." *Id*. Online fax "services can handle multiple simultaneous incoming transmissions and thus receipt of any one fax does not render the service unavailable for others." *Id*.

Less than one year later, in *Ryerson*, the Consumer and Governmental Affairs Bureau stated that the "AT&T's RingCentral Office@Hand tool" is an "online fax service" because the recipient received the fax "from its Office@Hand account as an email file" and Office@Hand is a "cloud-based service" that "cannot transcribe a fax onto paper." *In re Joseph T. Ryerson & Son, Inc. Petition for Declaratory Ruling et al.*, 35 FCC Rcd 9474, 9476-78 & n.14 (C.G.A.B. Sep. 4, 2020).

### *Amerifactors* and *Ryerson* Do Not Alter the Conclusion that Plaintiff Received Defendant's TCPA Violative Fax to a "Telephone Facsimile Machine"

Plaintiff's received Defendant's unsolicited fax advertisement on a "telephone facsimile machine." *See* 47 U.S.C. 447(a)(3) ("The term 'telephone facsimile machine' means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.").

3

Plaintiff's Lexmark fax machine is not an online fax service, and there was no online fax service otherwise involved in Plaintiff's receipt of Defendant's unsolicited fax advertisement.

Plaintiff's Lexmark fax machine did not hold Defendant's fax in digital form on a cloud-based server, where Plaintiff could access the document and view, delete it or print it as desired. First Amended Complaint at ¶ 26. Instead, the Plaintiff's fax machine transcribed the text and images from an electronic signal received over the telephone line onto paper. *Id*. ¶ 25. In fact, receiving the fax on a telephone line and fax machine required the Plaintiff to incur the loss of ink toner and paper necessary to print the fax. *Id*. at ¶ 26. Receipt and the printing of the fax also caused wear and tear on the Plaintiff's fax machine. *Id*. at ¶ 28.

Additionally, Defendant's fax occupied the phone line connected to Plaintiff's Lexmark fax machine making it unable to handle any other communications simultaneously. *Id*. at ¶¶ 29-31. In fact, anyone attempting to communicate with the Plaintiff during Defendant's unsolicited fax transmission would receive a message that Plaintiff is unavailable. *Id*. at ¶ 32.

Plaintiff therefore did not receive Defendant's unsolicited fax advertisement to an online fax service. To the contrary, by receiving the fax to his Lexmark fax machine, he suffered the precise harms that Congress aimed to prevent in enacting the TCPA's junk fax prohibition. *See, e.g., Amerifactors*, 34 FCC Rcd 11950, 11953 ("The House Report on the TCPA makes clear that the facsimile provisions of the statute were intended to curb two specific harms: 'First, [a fax advertisement] shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax.'").

### *Amerifactors* and *Ryerson* are Non-Final, Non-Binding Consumer and Governmental Affairs Bureau Orders in Direct Conflict with Prior Binding Precedent

Even if *Amerifactors* and *Ryerson* did somehow relate to the determination of whether Plaintiff's Lexmark fax machine is a "telephone facsimile machine," the Court is not bound by, nor should it defer to, the *Amerifactors* and *Ryerson* rulings as they are non-final orders in direct conflict with prior, final FCC orders and Seventh Circuit precedent.

The rulings by the Consumer and Governmental Affairs Bureau in both *Amerifactors* and *Ryerson* are currently on appeal to, and remain pending before, the full FCC—meaning the four Commissioners and the Chairman appointed by the president with the Senate's consent. *See* Application for Review of *Amerifactors* by Career Counseling, Inc., CG Docket Nos. 02-278, 05-338 (filed Jan. 8, 2020); Application for Review of *Ryerson* by Anderson + Wanca, CG Docket Nos. 02-278, 05-338 (filed Oct. 5, 2020).

"47 U.S.C. § 155(c)(3) provides that a ruling by a subordinate unit of the FCC shall have the same force and effect as orders, decisions, reports, or other actions of the Commission, unless reviewed as provided in paragraph (4) of this subsection. Section 155(c)(4) governs applications for review by the Commission. Accordingly, an order from a subordinate unit of the FCC becomes final if no application for review before the full Commission is filed. But once an application for review is filed, the subordinate unit's order is non-final." *Mussat v. IQVIA Inc.*, No. 17 C 8841, 2020 U.S. Dist. LEXIS 187976, at *8-9 (N.D. Ill. Oct. 9, 2020) (cleaned up). The Consumer and Governmental Affairs Bureau's *Amerifactors* and *Ryerson* rulings therefore are not "final orders" of the FCC subject to the jurisdictional limitations of the Administrative Orders Review Act (commonly known as the "Hobbs Act"), 28 U.S.C. § 2342(1). *Id*.

The Consumer and Governmental Affairs Bureau's *Amerifactors* and *Ryerson* rulings also conflict with prior FCC orders and binding Seventh Circuit precedent.

As early as 1995, the FCC rejected attempts by fax advertisers and fax broadcasters to narrowly interpret the term "telephone facsimile machine," ruling that it includes "computer fax modem boards," which "enable personal computers to transmit messages to or receive messages from conventional telephone facsimile machines or other computer fax modem boards." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12405, ¶ 28 (rel. Aug. 7, 1995) ("1995 Order").

In 2002, the FCC initiated a rulemaking proceeding to update its regulations, seeking public comment on, among other issues, whether the development of "computerized fax servers" might "warrant revisiting the rules on unsolicited faxes." *In re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*, 17 FCC Rcd. 17459, 17482 (Pub. Notice Sept. 18, 2002). Several "industry representatives" urged the FCC to rule that faxes sent to computerized "fax servers" and then forwarded to the end-user's email "inbox" are not sent to a "telephone facsimile machine" because they "do not implicate the harms Congress sought to redress in the TCPA, as they are not reduced to paper and can be deleted from one's inbox without being opened or examined." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14133 ¶ 199 (rel. July 3, 2003) ("2003 Order").

In the 2003 Order, the FCC rejected these arguments in a "final order" subject to the Hobbs Act's jurisdictional limitations, ruling that when a fax is sent to a "fax server" and then forwarded to the end-user by email, the "fax server" is a "telephone facsimile machine." *Id*. ¶ 200. The FCC reasoned that the TCPA "broadly applies to any equipment that has the capacity to send or receive text or images," and that the focus on the "capacity to transcribe text or images" is designed to "ensure that the prohibition on unsolicited faxing not be circumvented." *Id*. ¶ 201. The FCC ruled that "unsolicited faxes impose costs on consumers, result in substantial

6

inconvenience and disruption, and also may have serious implications for public safety." *Id*. ¶ 199. The FCC ruled that "Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines." *Id*. The FCC ruled that, although a fax may not automatically print when it is received by a fax server and forwarded to the user by email, such faxes may nevertheless "shift the advertising costs of paper and toner to the recipient, if they are printed," and they "may also tie up lines and printers so that the recipients' requested faxes are not timely received." *Id*. ¶ 202.

Apart from the lost paper and toner and tying up of lines, the 2003 Order noted that Congress was also concerned with the "interference, interruptions, and expense" to businesses and interstate commerce caused by junk faxes, and ruled that faxes sent to a fax server and forwarded to the user's email "inbox" "may increase labor costs for businesses, whose employees must monitor faxes to determine which ones are junk faxes and which are related to their company's business." *Id*. ¶¶ 199–202. The FCC ruled that "because a sender of a facsimile message has no way to determine whether it is being sent to a number associated with a stand-alone fax machine or to one associated with a personal computer or fax server, it would make little sense to apply different rules based on the device that ultimately received it." *Id*. ¶ 202.

On August 28, 2015, the Consumer and Governmental Affairs Bureau denied a petition by WestFax, an efax broadcaster, relying largely on the 2003 Order. *In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620, 8623, ¶ 9 (rel. Aug. 28, 2015) ("WestFax Order"). It noted that WestFax provided an "efax service" to customers called "FaxForward," which WestFax described as "a service that 'automatically converts received faxes into electronic images that are delivered directly to your email inbox.'" *Id*. ¶ 4. However, It rejected

7

"the contention that efaxes do not implicate the TCPA's consumer protection concerns" because they "may shift the advertising costs of paper and toner to the recipient if they are printed" and they cause "interference, interruptions, and expense" the same as any junk fax. *Id*. ¶ 11. The Consumer and Governmental Affairs Bureau ruled that efaxes "just like paper faxes, can increase labor costs for businesses, whose employees must monitor faxes to separate unwanted from desired faxes." *Id*.

The Consumer and Governmental Affairs Bureau also applied the ruling in the 2003 Order that "it would make little sense to apply a different set of rules (or, in this case, no rule at all) to faxes sent to one type of device (a standalone fax machine) versus another (a computer and its attachments) when the sender generally does not know what device will receive the fax." *Id*. No party sought reconsideration of the WestFax Order or filed an application for review with the full FCC, and so it carries "the FCC's imprimatur," as if it was issued by the full Commission. *Ind. Bell Tel. Co., Inc. v. McCarty*, 362 F.3d 378, 387 (7th Cir. 2004) (citing 47 C.F.R. § 1.102(b)).

And consistent with the FCC's prior, final orders, the Seventh Circuit has held that faxes received through online fax servers violate the TCPA. *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Even a recipient who gets the fax on a computer and deletes it without printing suffers some loss: the value of the time necessary to realize that the inbox has been cluttered by junk.").

Therefore, even if the *Amerifactors* and *Ryerson* rulings were applicable here (they're not), the Court is not bound by them, and otherwise has no reason to defer to them, as they are at odds with prior, binding FCC and Seventh Circuit precedent.

8

\*\*\*

The facts and rulings in *Amerifactors* and *Ryerson* dictate only one conclusion. The Plaintiff's Lexmark fax machine is a "telephone facsimile machine" and not an "online fax service." The Court should therefore deny Defendant's motion to dismiss for lack of subject matter jurisdiction.

Respectfully submitted,

Dated: June 25, 2021

By: */s/ Avi R. Kaufman*
Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Anthony I. Paronich (Bar No. 678437)
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018

*Attorneys for Plaintiff and the putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2021, I electronically filed the foregoing, which provided a copy to all counsel of record through the Court's CM/ECF system.

*/s/ Avi R. Kaufman*
Avi R. Kaufman

9

Case 2:20-cv-00775-PP   Filed 06/25/21   Page 10 of 10   Document 28