UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

JAMES HULCE on behalf of himself and others similarly situated,

Plaintiff,

v.

LUSTRE-CAL CORPORATION,

Defendant.

Case No.: 2020-CV-775

**DEFENDANT'S RESPONSE BRIEF REGARDING WHETHER AMERIFACTORS AND RYERSON ARE BINDING ON THIS COURT**

At the hearing on May 18, 2021, and in the Order from May 20, 2021, the Court ordered the Plaintiff file an amended complaint and ordered the parties to file simultaneous briefs on whether the FCC's rulings in *Amerifactors* and *Ryerson* are binding on the Court. The Court also ordered the parties to file simultaneous response briefs responding to each other's argument on the binding nature of *Amerifactors* and *Ryerson*. *In re Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling et al*., DA 19-1247, 2019 FCC LEXIS 3608, 2019 WL 6712128 (F.C.C. December 9, 2019); *In re Joseph T. Ryerson & Son, Inc. Petition for Declaratory Ruling*, DA 20-1038, 2020 FCC LEXIS 3385, 2020 WL 5362216 (F.C.C. Sept. 4, 2020).

Plaintiff amended his complaint on May 24, 2021. Thereafter, on June 25, 2021, Plaintiff filed his brief on the binding nature of *Amerifactors* and *Ryerson*. However, the first four pages of Plaintiff's eight page brief should be disregarded because he fails to address the issue the Court ordered the parties to address. Instead, Plaintiff attempts to reargue why he believes that his system qualifies as a traditional fax machine.

The Court already addressed this issue at the hearing on May 18, 2021 and in its decision on Defendant's motion to dismiss. The Court held that "[t]here is a clear factual dispute on this issue, one that the court cannot resolve without some discovery." (ECF No. 22 p. 9.) The Court also noted there was a legal question on whether the Court is bound by *Amerifactors*. Ultimately, the Court decided that "[i]f the court concludes that Amerifactors is binding, it will give the parties the opportunity to conduct limited discovery regarding the type of fax machine the plaintiff has." (*Id*. 9-10.) Thereafter, the Court also stayed the deadline for Defendant to respond to the Amended Complaint after it rules the binding effect of *Amerifactors* and *Ryerson*.

Contrary to this Court's previous orders, Plaintiff dedicates the first four pages of his eight page brief to reargue whether *Amerifactors* and *Ryerson* applies to his system. The Court has already determined that if *Amerifactors* and *Ryerson* are binding, then the parties will perform limited jurisdictional discovery. Thus, the first four pages of Plaintiff's brief should be disregarded because they fail to address the issue that this Court asked the parties to address.

Plaintiff thereafter tersely addresses why he believes *Amerifactors* and *Ryerson* are not binding on this Court in the last four pages of his brief. Plaintiff incorrectly argues that *Amerifactors* and *Ryerson* are not binding because they are not final orders. (ECF No. 28 at p. 6.) Plaintiff only references one of the two cases referenced by the Court's May 20, 2021 order, *Mussat v. IQVIA Inc*., No. 17 C 8841, 2020 U.S. Dist. LEXIS 187976 (N.D. Ill. Oct. 9, 2020). (Id.)

Plaintiff noticeably fails to address the subsequent procedural history in *Mussat*. The subsequent procedural history in *Mussat* provides a clearer picture of that Court's ultimate conclusion. After the Court issued its opinion on October 9, 2020, the defendant moved to stay the litigation pending it petition for *certiorari* to the U.S. Supreme Court on the issue of whether the court had personal jurisdiction over out-of-state putative class members. *Mussat*, No. 17 C 8841,

Dkt No. 129 (N.D. Ill. Oct. 29, 2020). The motion was subsequently rendered moot because the U.S. Supreme Court denied defendant's petition, so the court ordered the parties to file a joint status report. *Mussat,* Dkt No. 137 (Jan. 13, 2021).

The parties thereafter filed a contested joint status report wherein plaintiff advocated for the litigation to advance to discovery and defendant argued that the parties should brief whether plaintiff had Article III standing. *Mussat*, Dkt No. 138 (Jan. 21, 2021). The Court agreed with defendant that discovery "would be premature" and instead ordered the parties to brief the issue of whether plaintiff had Article III standing. *Mussat*, Dkt No. 139 (Jan. 25, 2021). The plaintiff thereafter filed a stipulation to dismiss within two weeks of the Court's order. *Mussat*, Dkt No. 140 (Feb. 10, 2021).

In addition to failing to address full picture of what occurred in *Mussat*, Plaintiff offers no explanation regarding why this Court should not follow *True Health Chiropractic Inc. v. McKesson Corp*., No. 13-cv-02219-HSG, 2020 U.S. Dist. LEXIS 242297, at *18 (N.D. Cal. Dec. 24, 2020).[1] *True Health* held:

> Here, **the Court finds that *Amerifactors* is a final, binding order for purposes of the Hobbs Act.** The Bureau acted "pursuant to delegated authority" to issue a declaratory ruling and the ruling became effective "upon release." *See* 47 C.F.R. § 1.2; 47 CFR § 1.102 (b)(1). **The pending petition for reconsideration before the FCC does not affect the order's finality as it applies to Defendants' potential liability under the TCPA. See 47 C.F.R. §1.102 (b)(2)**; *Comm. to Save WEAM v. Fed. Commc'ns Comm'n*, 808 F.2d 113, 119, 257 U.S. App. D.C. 218 (D.C. Cir. 1986) (holding that an application for FCC review could not preclude an order from taking effect unless the FCC decided to stay its effectiveness). And because *Amerifactors* establishes that those who received faxes via an online fax service have different legal rights

[1] The original *Mussat* decision did not address *True Health* because *True Health* was issued two months after *Mussat*. However, approximately one month after *True Health* was issued, the District Court in *Mussat* ordered the parties to address whether the plaintiff had Article III standing to assert claim.

> than those who received faxes on a telephone facsimile machine, it clearly "determines rights and gives rights to legal consequences." *See Hamilton*, 224 F.3d at 1055. **Moreover, Plaintiffs' request that the Court diverge from *Amerifactors'* fundamental holding, that online fax services do not fall under the TCPA, would "raise the same issues . . . as the declaratory ruling" and is thus precluded by Ninth Circuit precedent.** *See Wilson*, 87 F.3d at 399.

*True Health*, 2020 U.S. Dist. LEXIS 242297, at *18-19 (emphasis added).

Plaintiff does and cannot cite a single decision wherein the Court rejects the analysis in *Amerifactors* or *Ryerson*. Defendant asserts that these decisions are binding on this Court based on the Hobbs Act.

Regardless, even if Plaintiff is correct and the Hobbs Act does not apply, *Amerifactors* and *Ryerson* is still binding on this Court pursuant to *Chevron* deference. Plaintiff does not even attempt to argue why *Chevron* deference should not apply in his opening brief. As laid out in Defendant's initial brief, *Chevron* deference still requires that the Court apply the rulings here. *Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, No. 1:17-cv-01149-JDB-jay, 2020 U.S. Dist. LEXIS 153181, at *10 (W.D. Tenn. Aug. 24, 2020)(concluding that *Amerifactors* was not a final order subject to the Hobbs Act, but decided that Chevron deference required application of *Amerifactors* to modify the class definition to exclude "any fax(es) sent to an online fax service" because it "is not 'an unsolicited facsimile advertisement' prohibited by the TCPA."). In *Advanced Rehab*, the court thoroughly examined the Bureau's decisions in holding that *Chevron* deference applies, and it bears repeating here:

> The Bureau first looked to the plain language of the statute and correctly noted that the TCPA's prohibition on unsolicited fax advertisements applies only to faxes sent from a "telephone facsimile machine," a "computer," or any "other device" to a "telephone facsimile machine." *Amerifactors Ruling*, 34 FCC Rcd. at 11952 ¶ 10 (citing 47 U.S.C. § 227(b)(1)(C)). The agency then addressed the characteristics of an online fax service and explained that "online fax services hold inbound faxes in digital form on a cloud-based server, where the user accesses the document via the

> online portal or via an email attachment and has the option to view, delete, or print them as desired." *Id*. at 11953 ¶ 13. The CGAB also noted that "an online fax service cannot itself print a fax—the user of an online fax service must connect his or her own equipment in order to do so." *Id*. at ¶ 11 (emphasis added). Because the statutory definition of a telephone facsimile machine requires the equipment to have the capacity "to transcribe text or images (or both) . . . onto paper," 47 U.S.C. § 227(a)(3), the Bureau concluded that online fax services do not fall within the TCPA's definition of a telephone facsimile machine but instead "are more accurately characterized as faxes sent to a 'computer' or 'other device.'" *Amerifactors Ruling*, 34 FCC Rcd. at 11953 ¶ 11, 11954 ¶ 13. Since the agency's construction of the statute is reasonable, the Court is required to accept it. Accordingly, any fax(es) sent to an online fax service is not "an unsolicited facsimile advertisement" prohibited by the TCPA.

*Advanced Rehab*, 2020 U.S. Dist. LEXIS 153181, at *21-22.

Finally, Plaintiff concludes its brief by mistakenly arguing that the Seventh Circuit's from *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) somehow conflicts with *Amerifactors* and *Ryerson*. Plaintiff argues that *Holtzman* "held" that faxes received through online fax servers violate the TCPA. (ECF No. 28 at p. 9.) *Holtzman* never addresses this issue. Unlike *Amerifactors* and *Ryerson*, *Holtzman* never addresses the issue of whether a fax sent in digital form over the internet is governed by the TCPA. *Ryerson* affirmed *Amerifactors* and held that:

> In 2019, the Bureau determined in the *Amerifactors Declaratory Ruling* that to the extent **an unsolicited facsimile advertisement is sent to a service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," the language of the TCPA and our precedent make clear that the service is not a "telephone facsimile machine" and is thus outside the TCPA's reach**.

*In re Joseph T. Ryerson & Son, Inc. Petition for Declaratory Ruling*, DA 20-1038, 2020 FCC LEXIS 3385, at ¶10, 2020 WL 5362216 (F.C.C. Sept. 4, 2020) (emphasis added). Even a cursory review of *Holtzman* shows that it did not address the above quoted holding from *Ryerson*.

## CONCLUSION

Simply put, Plaintiff has not demonstrated that *Amerifactors* and *Ryerson* are inapplicable. Plaintiff relies on undeveloped case law or case law that is inapplicable. As set forth in Defendant's initial brief, *Amerifactors* and *Ryerson* are binding, or at least they are entitled to Chevron deference. Therefore, *Amerifactors* and *Ryerson* are applicable and should be applied in this case, and limited jurisdictional discovery should occur.

Dated this 16th day of July, 2021.

*Electronically signed by Alyssa A. Johnson*
Alyssa A. Johnson, State Bar No. 1086085
Attorneys for Defendant LUSTRE-CAL CORPORATION
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue, Suite 2600
Milwaukee, WI 53202
Phone No. 414-276-6464
Fax No. 414-276-9220
E-mail Address: ajohnson@hinshawlaw.com