IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| JAMES HULCE on behalf of himself and others similarly situated | : | |
| Plaintiff, | : | Case No. 20-cv-775 |
| v. | : | |
| LUSTRE-CAL CORPORATION | : | |
| Defendant. | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S BRIEF REGARDING STANDING**

Lustre-Cal argues that FCC final orders are entitled to deference under the Hobbs Act. Plaintiff doesn't disagree.

However, *Amerifactors* and *Ryerson* are not FCC final orders. They are nonfinal orders from a bureau of the FCC subject to pending applications for review by the full FCC. They also conflict with prior FCC final orders finding that faxes received to an online fax service constitute TCPA violations. They are therefore not entitled to any level of deference.

But even if they were, *Amerifactors* and *Ryerson* are irrelevant to the standing analysis in this case because Plaintiff did not receive Lustre-Cal's fax to an online fax service. Plaintiff received Lustre-Cal's fax on a fax machine, and Lustre-Cal's fax consumed Plaintiff's ink toner and paper, caused wear and tear to Plaintiff's fax machine, and occupied Plaintiff's fax line making it unavailable for other purposes. These are the precise harms that the FCC bureau determined Congress enacted the TCPA to protect against in *Amerifactors* and *Ryerson*.

Plaintiff therefore has standing to pursue his TCPA claim against Lustre-Cal.

\*\*\*

*First*, neither *Amerifactors* nor *Ryerson* are FCC final orders. They are nonfinal orders of a bureau of the FCC subject to pending applications for review by the full FCC. Lustre-Cal glosses

over this with a citation to *True Health*, which in turn cites to *Committee to Save WEAM*. Brief (ECF 27) at p. 3 ("*True Health* therefore expressly explains with citations to ample authority why *Amerifactors* is a final ruling from the FCC and so it qualifies as binding authority pursuant to the Hobbs Act.").

In *Committee to Save WEAM*, an FCC bureau issued an order that did not conflict with any prior FCC final order, and a timely application for review by the full FCC was filed. The bureau's order was then enforced by the FCC while the application for review remained pending, and the appellant filed an appeal to the D.C. Circuit.

In evaluating whether the appellant had been deprived of the opportunity to challenge the bureau's order by the FCC's enforcement of the bureau's order during the pendency of the application for review by the full FCC, the D.C. Circuit distinguished between the potential *effectiveness* of a bureau's order while the application is pending for purposes of FCC enforcement and the actual *finality* of a bureau's order while the application is pending for purposes of judicial action.

More specifically, the D.C. Circuit held that a bureau order that is the subject of a pending application for review by the full FCC may be "*effective*" for purposes of FCC enforcement, but is "*not final*" for purposes of judicial action. *Comm. to Save WEAM v. FCC*, 808 F.2d 113, 119 (D.C. Cir. 1986) ("Appellant argues that as it had filed a timely application for review which the Commission was required by paragraph (4) to pass upon, the Bureau order could not become effective under the terms of paragraph (3) until after the Commission review has been completed. While I believe appellant has the better part of the linguistic argument, the other members of the panel find the statutory language ambiguous and see nothing in the statute or its legislative history to preclude the transfer of the license pending final action by the Commission.").

Since its ruling in *Committee to Save WEAM* in 1986, the D.C. Circuit has consistently held that "[o]ngoing agency review renders an order nonfinal" for purposes of judicial action. *E.g., Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012); *Urban Comm'n-North Carolina, Inc. v. FCC*, No. 00-1430 Consolidated with 00-1463, 2000 U.S. App. LEXIS 35404, at *2 (D.C. Cir.

Dec. 4, 2000) ("the challenged order is nonfinal … in light of appellant/petitioner's request for reconsideration pending before the FCC"); *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (citing, e.g., *Wade v. FCC*, 986 F.2d 1433, 1434 (D.C. Cir. 1993) ("danger of wasted judicial effort … attends the simultaneous exercise of judicial and agency reconsideration")). *See also* the following cases citing *Committee to Save WEAM*: (1) *Jones v. FCC*, No. 95-1572, 1996 U.S. App. LEXIS 26152, at *2 (D.C. Cir. Aug. 28, 1996) ("Because petitioner has not obtained a final order from the Commission disposing of any such application, this court is without authority to review the Bureau decision."); (2) *Simon v. FCC*, No. 95-1240, 1996 U.S. App. LEXIS 20297, at *1 (D.C. Cir. July 16, 1996) ("The decision appealed from is a nonfinal staff ruling. Before judicial review may be sought, an application for agency review must be filed and disposed of by the Commission."); (3) *Orion Communs. Ltd. v. FCC*, No. 97-1395, 1997 U.S. App. LEXIS 26332, at *2 (D.C. Cir. Aug. 19, 1997) ("To the extent that the notice of appeal also seeks a petition for a writ of mandamus to compel the FCC to act on matters pending before it, the petition is denied. Appellant has not shown that the FCC's delay has been unreasonable.").

The D.C. Circuit has never held otherwise. Nor has any other circuit court. *E.g., Ga. Power Co. v. Teleport Communs. Atlanta, Inc.*, 346 F.3d 1047, 1050 (11th Cir. 2003) ("The Cable Services Bureau's order would become final if Georgia Power did not file an application for review, but once it files an application for review, the subordinate unit's order is non-final …. The D.C. Circuit also reached this same conclusion in a case involving the Common Carrier Bureau of the FCC."); *Cellular Phone Taskforce v. FCC*, 205 F.3d 82, 88-89 (2d Cir. 2000) ("While they were raised before a staff member, the Chief of the Office of Engineering and Technology, they were not presented to the Commission. Decisions of agency staff are not directly appealable final orders.").

In fact, it appears that the misreading of *Committee to Save WEAM* that Lustre-Cal argues this Court should follow based exclusively on a Ninth Circuit district court's opinion in *True Health* appears in only a couple of outlier lower court opinions. *Cf. GCB Communs., Inc. v. United States S. Communs., Inc.*, No. 07-CV-2054-PHX-SRB, 2012 U.S. Dist. LEXIS 198670, at *6 (D.

3

Case 2:20-cv-00775-PP   Filed 07/16/21   Page 3 of 6   Document 32

Ariz. Oct. 23, 2012) ("While Plaintiffs may not be seeking judicial review in the traditional sense of an appeal of the Declaratory Ruling, the parties agree that the Court must review the legal sufficiency of the Declaratory Ruling before making a determination in this case. Because Defendant has filed a petition for review by the FCC, it would be premature for the Court to enter a final judgment based on its reading of an interpretation that the FCC has not yet 'adopted, amended, or rescinded.'").

This is no small matter because *Amerifactors* and *Ryerson* are both directly at odds with prior FCC final orders. *E.g., In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620, 8623, ¶ 11 (rel. Aug. 28, 2015) ("it would make little sense to apply a different set of rules (or, in this case, no rule at all) to faxes sent to one type of device (a standalone fax machine) versus another (a computer and its attachments) when the sender generally does not know what device will receive the fax"). And because the parties agree that the Court must defer to FCC final orders under the Hobbs Act, the *Amerifactors* and *Ryerson* orders cannot be entitled to any level of deference in the face of contrary FCC final orders like the *Westfax* order.

*Second*, and perhaps more importantly, even if *Amerifactors* and *Ryerson* were entitled to any level of deference, Lustre-Cal fails to explain how they impact the outcome of the standing analysis in this case. Probably because they don't.

As Lustre-Cal itself explains, in *Amerifactors* and *Ryerson*, the bureau found that "the TCPA does not apply to documents that are sent as email over the Internet and received as email." Brief at p. 9 (citing *Ryerson*, which "confirmed [the] analysis from *Amerifactors*").

However, Plaintiff received Lustre-Cal's unsolicited fax advertisement on a "telephone facsimile machine." *See* 47 U.S.C. 447(a)(3) ("The term 'telephone facsimile machine' means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."). Plaintiff's Lexmark fax machine is not an online fax service, and there was no online fax service otherwise involved in Plaintiff's receipt of Lustre-Cal's unsolicited fax advertisement.

4

Plaintiff's Lexmark fax machine did not hold Lustre-Cal's fax in digital form on a cloud-based server, where Plaintiff could access the document and view, delete it or print it as desired. First Amended Complaint at ¶ 26. Instead, the Plaintiff's fax machine transcribed the text and images from an electronic signal received over the telephone line onto paper. *Id*. ¶ 25. In fact, receiving the fax on a telephone line and fax machine required the Plaintiff to incur the loss of ink toner and paper necessary to print the fax. *Id*. at ¶ 26. Receipt and the printing of the fax also caused wear and tear on the Plaintiff's fax machine. *Id*. at ¶ 28.

Additionally, Lustre-Cal's fax occupied the phone line connected to Plaintiff's Lexmark fax machine making it unable to handle any other communications simultaneously. *Id*. at ¶¶ 29-31. In fact, anyone attempting to communicate with the Plaintiff during Lustre-Cal's unsolicited fax transmission would receive a message that Plaintiff is unavailable. *Id*. at ¶ 32.

Plaintiff therefore did not receive Lustre-Cal's unsolicited fax advertisement to an online fax service. To the contrary, by receiving the fax to his Lexmark fax machine, he suffered the precise harms that Congress aimed to prevent in enacting the TCPA's junk fax prohibition. *See, e.g., Amerifactors*, 34 FCC Rcd 11950, 11953 ("The House Report on the TCPA makes clear that the facsimile provisions of the statute were intended to curb two specific harms: 'First, [a fax advertisement] shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax.'").

***

*Amerifactors* and *Ryerson* are nonfinal orders of a bureau of the FCC subject to pending applications for review by the full FCC. They also conflict with prior FCC final orders. They are therefore not entitled to any deference.

But even if they were, they simply don't apply in this case where Plaintiff received Lustre-Cal's fax on an actual fax machine and suffered the precise type of harms Congress enacted the TCPA to protect against.

The Court should therefore deny Lustre-Cal's motion to dismiss for lack of standing.

5

Respectfully submitted,

Dated: July 16, 2021

*/s/ Avi R. Kaufman*
Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Anthony I. Paronich
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018

*Attorneys for Plaintiff and the putative Class*

CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2021, I electronically filed the foregoing, which provided a copy to all counsel of record through the Court's CM/ECF system.

*/s/ Avi R. Kaufman*
Avi R. Kaufman