Temporarily unable to receive Shepard's Signal™
As of: August 3, 2021 12:31 PM Z

# [Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC](#)

United States District Court for the District of South Carolina, Columbia Division

July 16, 2021, Decided; July 16, 2021, Filed

Civil Action No.: 3:16-cv-03013-JMC

**Reporter**
2021 U.S. Dist. LEXIS 132869 *; 2021 WL 3022677

Career Counseling, Inc. d/b/a Snelling Staffing Services, a South Carolina corporation, individually and as the representative of a class of similarly situated persons, Plaintiff, v. Amerifactors Financial Group, LLC, and John Does 1-5, Defendants.

## Core Terms

fax, Appoint, class representative, class certification, class member, fax machine, declaratory, asserts, parties, proposed class, ascertainable, numbers, online, stand-alone, unsolicited, logs, advertisement, argues, notice, recipient, telephone, subscriber, certification, deference, phone, motion to dismiss, public notice, class action, delegated, certify

**Counsel:** [*1] For Career Counseling, Inc., a South Carolina corporation, individually and as the representative of a class of similarly-situated persons, doing business as, Snelling Staffing Services, Plaintiff: John Gressette Felder, Jr, LEAD ATTORNEY, McGowan Hood and Felder, Columbia, SC; Brian J Wanca, PRO HAC VICE, Anderson and Wanca, Rolling Meadows, IL; Glenn L Hara, PRO HAC VICE, Anderson & Wanca, Rolling Meadows, IL; Jordan Christopher Calloway, McGowan Hood and Felder LLC, Rock Hill, SC; Ross M Good, PRO HAC VICE, Anderson and Wanca, Rolling Meadows, IL; Ryan Michael Kelly, PRO HAC VICE, Anderson and Wanca, Rolling Meadows, IL; Wallace C Solberg, PRO HAC VICE, Anderson and Wanca, Rolling Meadows, IL.

For Amerifactors Financial Group, LLC, Defendant: Jonathan Mark Knicely, LEAD ATTORNEY, Nelson Mullins Riley and Scarborough LLP (Cola), Columbia, SC; William H Latham, LEAD ATTORNEY, Nelson Mullins Riley and Scarborough, Columbia, SC; Lauri A Mazzuchetti, PRO HAC VICE, Kelley Drye and Warren LLP, Parsippany, NJ; Whitney M Smith, PRO HAC VICE, Kelley Drye and Warren LLP, Parsippany, NJ.

For United States of America, Interested Party: Jacqueline LaPan Edgerton, LEAD ATTORNEY, US Attorneys Office [*2] (Chas), Charleston, SC.

**Judges:** J Michelle Childs, United States District Judge.

**Opinion by:** J Michelle Childs

## Opinion

### ORDER AND OPINION

Plaintiff Career Counseling, Inc. d/b/a Snelling Staffing Services, on behalf of itself and all others similarly situated, filed the instant putative class action seeking damages and injunctive relief from Defendants Amerifactors Financial Group, LLC ("AFGL") and John Does 1-5 (collectively "Defendants") for alleged violations of the Telephone Consumer Protection Act ("TCPA") of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), *47 U.S.C. § 227*, and the regulations promulgated under the TCPA by the United States Federal Communications Commission ("FCC"). (ECF No. 70.)

This matter is before the court on Career Counseling's Motion for Class Certification, Motion to Appoint Class Counsel, and Motion to Appoint Class Representative pursuant to *Rule 23 of the Federal Rules of Civil Procedure* (ECF No. 197). Specifically, Career Counseling "requests that the [c]ourt certify [it]s proposed Class A, or, in the alternative, Class B, pursuant to *Rule 23(a)* and *Rule 23(b)(3)*, appoint [Career Counseling] the class representative, and appoint [it]s counsel as class counsel pursuant to *Rule 23(g)*." (ECF No. 197 at 3.) AFGL opposes the Motions arguing that Career Counseling "fails to meet its burden to establish predominance or that its proposed class is [*3] ascertainable, as required under both *Rule 23* and Fourth Circuit law" and "cannot demonstrate that it is an adequate or typical class representative, or that its

proposed class counsel can meet their duty to the proposed class." (ECF No. 206 at 9, 10.) For the reasons set forth below, the court **DENIES** Career Counseling's Motion for Class Certification, and **DENIES AS MOOT** its Motion to Appoint Class Counsel and Motion to Appoint Class Representative. (ECF No. 197.)

## I. RELEVANT BACKGROUND TO PENDING MOTIONS

### A. The TCPA and the JFPA

The TCPA prohibits the faxing of unsolicited advertisements without "prior express invitation or permission" from the recipient. S. Rep. No. 102-178, at 12. Congress' primary purpose in passing the TCPA was to protect the privacy interests of residential telephone subscribers and the public from bearing the cost of unwanted advertising. *Id.* at 1; S. Rep. No. 109-76, at 3. Congress was expressly concerned because "[j]unk faxes create costs for consumers (paper and toner) and disrupt their fax operations." GAO@100, *Telecommunications: Weaknesses in Procedures and Performance Management Hinder Junk Fax Enforcement*, https://www.gao.gov/products/gao-06-425 (last visited [*4] July 15, 2021).

In 1992, the FCC released its interpretation of the TCPA, which established an exception for unsolicited advertisement faxes ("junk faxes") between parties with an established business relationship ("EBR"). S. Rep. No. 109-76, at 2. The FCC relied on this interpretation until 2003, when it reevaluated and created a stricter standard for junk faxes. *Id.* at 3. Under this new standard, junk faxes could only be sent with prior express permission in the form of written consent from the receiver, and an EBR (which initially had no specified limit) could only be relied upon by the sender for eighteen (18) months after a purchase and three (3) months after an initial inquiry. *Id.* at 4-5.

After this change, many petitions from businesses requested that the FCC return to its previous interpretation of the TCPA, citing efficiency purposes and the enormous cost of compliance with the new interpretation. *Id.* at 4. This caused the FCC to order a stay on these new rules until 2005. *Id.*

In response, Congress passed the JFPA in 2005, codifying the EBR exception to the ban on unsolicited advertising faxes, allowing those with a business relationship to bypass the written consent rule. S. [*5] Rep. No. 109-76, at 1. The JFPA also requires that senders of junk faxes provide notice of a recipient's ability to opt out of receiving any future faxes containing unsolicited advertisements.[1] *Id.*

As a result of the foregoing, the JFPA expressly prohibits the faxing of unsolicited advertisements. *47 U.S.C. § 227(b)(1)(C)*. The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *47 U.S.C. § 227(a)(5)*. The JFPA creates a private right of action for a person or entity to sue a fax sender that sends an unsolicited advertisement and allows recovery of either actual monetary loss or $500.00 in damages, whichever is greater, for each violation. *Id.* at *§ 227(b)(3)*.

### B. The Parties

Career Counseling is an employment staffing agency, which acts as a middleman between employers and prospective workers. (ECF No. 197-7 at 4/27:6-13.[2]) AFGL is an accounts receivable financing firm that engages in factoring. (ECF No. 206-2 at 74/4:17-19.) Factoring is a process [*6] in which AFGL purchases a

---

[1] Testimony in the JFPA legislative history outlined concerns about the prior written consent requirement from the FCC. For example, National Association of Realtors Broker Dave Feeken testified that not only would a written consent requirement be costly and time-consuming for businesses, but it would also go against the legislative intent of the TCPA, as both the House and the Senate considered and rejected an express written consent requirement for calls and faxes. *Junk Fax Bill: Hearing on S. 714 Before Comm. on S. Commerce, Sci., & Tourism*, 109th Cong. (2005) (Test. of Dave Feeken, 2005 WL 853591 (Apr. 13, 2005)). News-Register Publishing Company President Jon E. Bladine pointed out that the signed consent leaves open the threat of litigation for every small business. *Id.* (Test. of Jon Bladine, 2005 WL 853593 (Apr. 13, 2005).) Bladine explained that fax numbers change, sometimes people misfile forms, and miscommunications between companies happen. *Id.* Not only that, but companies could use a fax in bad faith to sue another company, hoping they do not have the requisite consent form. *Id.* "[I]f we've messed up that time," he asks, "will we pay, even though we know — and the recipient in all honesty knows — the issue isn't about the fax at all?" *Id.*

[2] The parties filed on the electronic docket condensed transcripts with 4 pages of testimony on each page. For citation purposes, the number before the slash is the ECF page number and the number after the slash is the transcript page number.

business's accounts receivable of unpaid invoices for a discounted price with the intention of collecting the full value of the unpaid invoices at a later date. (ECF No. 206-2 at 74/4:17-23; ECF No. 197-4 at 4/6:12-7:4.) In June of 2016, AFGL became interested in marketing by fax and, as a result, contracted with AdMax, a fax marketer. (ECF No. 197-4 at 4/7:5-25.)

On or about June 28, 2016, Career Counseling received the following unsolicited fax:



(ECF Nos. 70 at 3 ¶ 13, 70-1 at 2.) Career Counseling asserts that similar unsolicited faxes were sent by or on behalf of AFGL to 58,945 other recipients. (*E.g.*, ECF No. 197-13 at 15 ¶¶ 43, 44.)

On September 2, 2016, Career Counseling filed a putative Class Action Complaint in this court alleging violation of the TCPA. (ECF No. 1 at 8 ¶ 27-13 ¶ 36.) On October 28, 2016, AFGL filed a Motion to Dismiss. (ECF No. 29.) After the parties responded and replied to the Motion to Dismiss (ECF Nos. 43, 47), the court entered an Order that granted AFGL's Motion to Dismiss pursuant to Rule 12(b)(1) and dismissed the Class Action Complaint without prejudice. (ECF No. 61 at 10.) After receiving leave from the court (*see* ECF No. 67), Career Counseling **[*7]** filed a First Amended Class Action Complaint on November 28, 2017, alleging revised class claims for violation of the TCPA. (*See* ECF No. 70.) AFGL then filed a Motion to Dismiss (ECF No. 72) on December 21, 2017, and a Motion to Stay Litigation Pending Resolution of Petition Before the FCC (ECF No. 76) on February 2, 2018.[3] On September 28, 2018, the court granted the stay, but denied the Motion to Dismiss with leave to refile. (ECF No. 88.) The court subsequently extended the stay twice. (ECF Nos. 92, 96.)

In response to the petition by AFGL asking the FCC "to clarify that faxes sent to 'online fax services' are not faxes sent to 'telephone facsimile machines,'" the Consumer and Government Affairs Bureau[4] ("CGAB") issued a declaratory ruling on December 9, 2019, finding that an online fax service that receives faxes "sent as email over the Internet" is not protected by the TCPA. *See Amerifactors Fin. Grp., LLC*, CG Docket Nos. 02-278, 05-338, DA 19-1247, 2019 WL 6712128 (CGAB Dec. 9, 2019) (Pet. for Expedited Declaratory Ruling). Specifically, the CGAB found in relevant part:

> By this declaratory ruling, we make clear that an online fax service that effectively receives faxes 'sent as an **[*8]** email over the internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper' is not a 'telephone facsimile machine' and thus falls outside the scope of the statutory prohibition.

*Amerifactors Fin. Grp., LLC, 30 FCC Rcd 8598, 2019 WL 6712128, at \*1*.

The court lifted the stay on January 8, 2020, but stayed the case again on April 16, 2020, after being informed by AFGL that it had sent a Notice of Constitutional Challenge (ECF No. 120) to the Attorney General of the United States pursuant to *Rule 5.1(a) of the Federal Rules of Civil Procedure* drawing into question the constitutionality of the TCPA, as amended by the JFPA. On May 18, 2020, the Government filed a response to AFGL's Notice of Constitutional Challenge asserting that "intervention [wa]s premature prior to Defendants' filing[] a motion to dismiss on constitutional grounds." (ECF

---

[3] AFGL hoped to stay the matter until (1) the court ruled on the pending Motion to Dismiss and (2) the FCC took final agency action on AFGL's pending petition for declaratory relief. (ECF No. 76 at 1.)

[4] "The Consumer and Governmental Affairs Bureau develops and implements the FCC's consumer policies and serves as the agency's connection to the American consumer." *FCC*, https://www.fcc.gov/consumer-governmental-affairs (last visited June 25, 2021). The Consumer and Governmental Affairs Bureau "serve[s] as the public face of the commission through outreach and education, as well as through our consumer center, which is responsible for responding to consumer inquiries and complaints." *Id.* at https://www.fcc.gov/general/consumer-and-governmental-affairs-bureau (last visited June 25, 2021).

No. 126 at 2.)

On July 15, 2020, AFGL filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 137.) After considering the parties extensive briefing (see ECF Nos. 139, 147, 164, 165, 166, 169, 170), the court denied AFGL's Motion to Dismiss on December 22, 2020. (ECF No. 171.) Thereafter, AFGL answered the Amended [*9] Complaint and the parties engaged in extensive discovery regarding the extent to which the facsimile at issue was sent to the putative class.

On March 16, 2021, Career Counseling filed the instant Rule 23 Motions. (ECF No. 197.) On April 15, 2021, AFGL filed a Memorandum of Law in Opposition to Motion for Class Certification, to which Career Counseling filed a Reply in Support of Its Motion for Class Certification on April 30, 2021. (ECF Nos. 206, 211.) The court heard argument from the parties as to their respective positions at a hearing on May 19, 2021. (ECF No. 217.)

## II. JURISDICTION

This court has jurisdiction over Career Counseling's claim alleging violation of the TCPA via 28 U.S.C. § 1331, as it arises under the laws of the United States, and also via 47 U.S.C. § 227(b)(3), which empowers actions under the TCPA "in an appropriate court of th[e] State . . . ." Id. See also Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012) ("Nothing in the text, structure, purpose, or legislative history of the TCPA calls for displacement of the federal-question jurisdiction U.S. district courts ordinarily have under 28 U.S.C. § 1331.").

## III. LEGAL STANDARD

### A. Class Certification

Rule 23(a) provides that certification is only proper if: "(1) the class is so numerous that joinder of all members is impracticable; (2) [*10] there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to the foregoing requirements, the United States Court of Appeals for the Fourth Circuit has held that a class cannot be certified if the class members are not identifiable or ascertainable, stating ". . . Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014) (quoting Hammond v. Powell, 462 F.2d 1053, 1055 (4th Cir. 1972)); see also Krakauer v. Dish Network, LLC, 925 F.3d 643, 655 (4th Cir. 2019) ("Under this principle, sometimes called 'ascertainability,' 'a class cannot be certified unless a court can readily identify the class members in reference to objective criteria.'" (quoting EQT Prod. Co., 764 F.3d at 358)).

Once the Rule 23(a) prerequisites are met, the proposed class must still satisfy one (1) of three (3) additional requirements for certification under Rule 23(b). See EQT Prod. Co., 764 F.3d at 357 (quoting Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 423 (4th Cir. 2003)). Career Counseling seeks certification under Rule 23(b)(3); therefore, it must show that "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is superior to other [*11] available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b) (emphasis added). "The predominance requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a)." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006) (citing Lienhart v. Dryvit Sys., 255 F.3d 138, 146 n.4 (4th Cir. 2001)).

A party must produce enough evidence to demonstrate that class certification is in fact warranted. See Wal—Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). If one of the requirements necessary for class certification is not met, the effort to certify a class must fail. See Clark v. Experian Information Solutions, Inc., 2001 U.S. Dist. LEXIS 20024, 2001 WL 1946329, at *4 (D.S.C. March 19, 2001) (citing Harriston v. Chicago Tribune Co., 992 F.2d 697 (7th Cir. 1993)). The court must go beyond the pleadings, take a "'close look' at relevant matters," conduct "a 'rigorous analysis' of such matters," and make "'findings' that the requirements of Rule 23 have been satisfied." See Gariety v. Grant Thornton, LLP, 368 F.3d 356, 365 (4th Cir. 2004) (internal and external citations omitted). While the court should not "include consideration of whether the proposed class is likely to prevail ultimately on the merits," id. at 366 (citing Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)), "sometimes it may be necessary for the district court to probe behind the pleadings before coming to rest on the certification

question." *Id.* (citing *Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)*).

B. Appointment of Class Representative

"[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight v. Rodriguez, 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977)* (quoting *Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216, 94 S. Ct. 2925, 41 L. Ed. 2d 706 (1974)*). To accomplish this task, the **[*12]** court should appoint as class representative the person or persons who are "most capable of adequately representing the interests of class members." *15 U.S.C. § 78u-4(a)(3)(B)(i)*. *See also Fed. R. Civ. P. 23(a)(4)* (class representative must be one who can "fairly and adequately protect the interests of the class").

C. Appointment of Class Counsel

*Rule 23* provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." *Fed. R. Civ. P. 23(g)(1)*. "In appointing class counsel, the court:

> (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class; (C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs; (D) may include in the appointing order provisions about the award of attorney's fees or **[*13]** nontaxable costs under *Rule 23(h)*; and (E) may make further orders in connection with the appointment.

*Fed. R. Civ. P. 23(g)(1)*. Additionally, "[c]lass counsel must fairly and adequately represent the interests of the class." *Id.* at *23(g)(4)*.

IV. ANALYSIS

A. The Parties' Arguments

1. Motion for Class Certification

Pursuant to *Rules 23(a)* and *23(b)(3) of the Federal Rules of Civil Procedure*, Career Counseling moves the court to certify the following proposed class:

> All persons or entities who were successfully sent a fax, on or about June 24 and 28, 2016, stating: "AmeriFactors—Funding Is Our Business," and "AmeriFactors is ready to help your company with your financing needs."

(ECF No. 197 at 1.) In the alternative, "if the [c]ourt finds it necessary to distinguish between faxes received on a 'stand-alone' fax machine versus faxes received via an 'online fax service,'" Career Counseling moves for certification of a class defined as follows:

> All persons or entities who were successfully sent a fax to their stand-alone fax machine, on or about June 24 and 28, 2016, stating: "Amerifactors—Funding Is Our Business," and "Amerifactors is ready to help your company with your financing needs."

(*Id.* at 2.)

In support of its Motion, Career Counseling asserts that it satisfies *Rule 23(a)*'s criteria because (1) **[*14]** fax logs demonstrate that AFGL successfully sent faxes; (2) there are six (6) questions that are common to all class member's claims[5];(3) its claims are identical and based on the same legal theory as the other class members; and (4) it is an adequate class representative because it "has done everything it believes necessary to protect the class" and "[t]here has been no showing of either an actual or potential conflict between Plaintiff and the members of the proposed Classes." (ECF No. 197-1 at 18-20.) Career Counseling further asserts that this case satisfies one (1) of *Rule 23(b)*'s categories because common questions regarding AFGL's transmission of an unsolicited fax advertisement predominate over any individual issues and caselaw clearly supports that

---

[5] Career Counseling specified that the six (6) questions are as follows: "whether the fax is an advertisement, whether AFGL is the sender, whether AFGL can prove its affirmative defenses of 'prior express invitation or permission' or 'established business relationship,' whether the fax was sent from a telephone facsimile machine, computer, or other device, to telephone facsimile machines, whether the *Amerifactors* and *Ryerson* Orders are entitled to *Skidmore* deference, and whether those Orders can be applied retroactively, can all be resolved at once with common evidence." (ECF No. 197-1 at 19.)

proposition that a class action is "a superior method of adjudicating mass TCPA violations." (*Id.* at 22 (citing *Sandusky Wellness Ctr., LLC v. MedTox Sci., Inc., 821 F.3d 992, 998 (8th Cir. 2016)* ("[C]lass certification is normal" in TCPA cases "because the main questions, such as whether a given fax is an advertisement, are common to all recipients.")).) In this regard, Career Counseling asserts that "class members have little economic incentive to sue individually, given that each class member would be limited to $500 **[*15]** to $1,500 per fax, and the TCPA does not provide for shifting of attorney fees." (*Id.* at 23.)

AFGL argues that class treatment is inappropriate because in order "[t]o determine whether each Fax recipient received the Fax on a 'telephone facsimile machine,' as required by the TCPA," the court will "have to conduct an individualized inquiry into the type of equipment on which the recipient received the Fax." (ECF No. 206 at 41.) AFGL asserts that fax logs do not "show which faxes were sent to an online or email-based facsimile service versus which faxes were sent to a traditional fax machine." (*Id.* (citing ECF No. 206-2 at 117 ¶ 53).) AFGL argues this inquiry "will overwhelm any other purportedly common issues." (*Id.* at 42.) Moreover, "individualized inquiries are required to determine the manner in which a recipient received the Fax." (*Id.* at 45.)

In addition to the foregoing, AFGL argues that Career Counseling's Motion for Certification should be denied because the court lacks both general jurisdiction and/or personal jurisdiction over AFGL because it is a non-resident of South Carolina and there is no connection between the putative class members' claims and **[*16]** forum. (*Id.* at 47.)

### 2. Motion to Appoint Class Representative

Career Counseling contends that it "should be appointed class representative, as it has no conflicts and will actively and adequately prosecute this action." (ECF No. 197 at 2.)

AFGL opposes the appointment of Career Counseling as class representative. AFGL argues that Career Counseling is an inadequate representative because its actions during discovery demonstrate that it lacks knowledge about the case and is a pawn for its counsel. (*See* ECF No. 206 at 21-24.) To this point, AFGL asserts that Career Counseling's "corporate representative repeatedly referred to legal counsel in response to questions about the most basic aspects of this litigation, including the discovery investigation, settlement negotiations and its obligations as class representative." (*Id.* at 24 (citing, *e.g.,* *Physicians Healthsource Inc. v. Allscripts Health Sols. Inc., 254 F. Supp. 3d 1007, 1023 (N.D. Ill. 2017)* ("A plaintiff who seeks to be the class representative cannot simply shift its duties to class counsel.")).) AFGL further asserts that Career Counseling's appointment to class representative could negatively affect any class recovery because Career Counseling "is a repeat TCPA plaintiff and has trolled for TCPA violations in the fax context — admitting **[*17]** that it provided at least 100 faxes to its counsel for review" while not attempting "to opt out of receiving any further faxes." (*Id.* at 25.) Finally, AFGL argues that Career Counseling should not be appointed class representative because its claims are "not typical because it received the Fax on a traditional fax machine, unlike numerous other class members." (*Id.* at 26.)

### 3. Motion to Appoint Class Counsel

Career Counseling asserts that "the law firms of McGowan, Hood & Felder, and Anderson + Wanca, are highly experienced in class-action litigation and, in particular, TCPA class-action litigation, and should be appointed class counsel under *Rule 23(g)*." (ECF No. 197 at 2.)

AFGL opposes the appointment of Career Counseling's attorneys as class counsel. More specifically, AFGL argues that the law firm of Anderson and Wanca is inadequate under *Rule 23(g)* because it has previously been found to have engaged in ethical impropriety by recording telephone conversations in violation of state law. (ECF No. 206 at 20, 27 (citing ECF No. 206-3).) AFGL next asserts that Anderson and Wanca has a conflict with one (1) putative class member, American HomePatient, Inc. ("AHI"), because the firm has brought a TCPA claim **[*18]** against AHI in another case. (*Id.* at 20 (citing *Presswood, D.C., P.C. v. Am. HomePatient, Inc.*, No. 4:17-cv-01977-SNLJ, ECF No. 1-1 (E.D. Mo. July 14, 2017)).) Finally, AFGL argues that Career Counseling's attorneys throughout the litigation of this matter have demonstrated an inability to efficiently handle class-based discovery. (*Id.* at 28.)

### 4. Relevance of the CGAB's Ruling

The parties expressly disagree regarding the relevance of the CGAB's declaratory ruling. Career Counseling

appears to contend that the court's December 22, 2020 Order makes the declaratory ruling inapposite. (*See* ECF No. 197-1 at 25.) However, even if this is not the case, Career Counseling asserts that the CGAB's declaratory ruling is an interpretive ruling and under *Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)*, and Fourth Circuit law is "entitled to respect only to the extent it has the power to persuade." (*Id.* at 27 (quoting *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC, 982 F.3d 258, 264 (4th Cir. 2020)*).) Ultimately, Career Counseling asserts that the CGAB's declaratory ruling has "no power to persuade and [is] entitled to no deference." (*Id.*)

AFGL counters arguing that the court is bound to defer to the CGAB's ruling pursuant to the Hobbs Act, *28 U.S.C. § 2342*, and, alternatively, should accept the ruling and defer to it as required by *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)*. (ECF **[*19]** No. 206 at 30.) However, even if the court agrees with Career Counseling that the declaratory ruling is only entitled to *Skidmore* deference, AFGL argues that the CGAB's ruling is persuasive because it (1) came from the expert at interpreting the TCPA, (2) gives appropriate meaning to the TCPA's statutory language, and (3) "is consistent with both prior and later pronouncements." (*Id.* at 35.)

B. The Court's Review

*1. Relevance of the CGAB's Ruling*

On December 9, 2019, the CGAB issued a declaratory ruling effectively finding that faxes sent to 'online fax services' are not faxes sent to 'telephone facsimile machines.'" *See Amerifactors Fin. Grp., 30 FCC Rcd 8598, 2019 WL 6712128*. The court observes that the parties' instant class certification dispute requires it to first consider whether the CGAB's ruling is entitled to Hobbs Act deference.[6] To this point, "[i]f the Hobbs Act applies, a district court must afford FCC final orders deference and may only consider whether the alleged action violates FCC rules or regulations." *Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1307 (11th Cir. 2015)*. The Hobbs Act is applicable if a ruling is (1) of the FCC, (2) final, and (3) legislative instead of interpretive. *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc., 139 S. Ct. 2051, 2055-56, 204 L. Ed. 2d 433 (2019)* (citing *28 U.S.C. § 2342(1)*).

As to the first element, the court finds that the CGAB's ruling is of the FCC. The CGAB is **[*20]** a bureau that "acts for the [Federal Communications] Commission under delegated authority" in matters of "adjudication and rulemaking." *47 C.F.R. § 0.141*. The Fourth Circuit has clarified that "[w]hen a federal agency delegates its decision-making authority to a subdivision and Congress has expressly permitted such delegation by statute, the decision of the subdivision is entitled to the same degree of deference as if it were made by the agency itself." *MCImetro Access Transmission Servs. Inc. v. BellSouth Telecomms., Inc., 352 F.3d 872, 880 (4th Cir. 2003)*. The appropriate authority has been delegated to the CGAB both by the FCC and by Congress in statute. *See 47 C.F.R. § 0.141*. Therefore, the CGAB acts as a delegated authority under the FCC, and any order from the CGAB should be treated as if it were from the FCC.

Next, the court observes that the CGAB's ruling is legislative, instead of interpretive. A legislative order is issued "by an agency pursuant to statutory authority" and has "force and effect of law" behind it. *PDR Network, 139 S. Ct. at 2055*. An interpretive ruling, on the other hand, does not have the force and effect of law as it merely "advis[es] the public of the agency's construction of the statutes and rules which it administers." *Id.* To become a legislative rule with the full force and effect of law, a rule must also go through the **[*21]** three step "notice-and-comment rulemaking" process under the *Administrative Procedure Act, 5 U.S.C. § 553*. *Perez v. Mortg. Bankers Ass'n, 575 U.S. 92, 96, 135 S. Ct. 1199, 191 L. Ed. 2d 186 (2015)*. This process requires the agency making the legislative rule to (1) issue a "[g]eneral notice of proposed rule making," (2) give interested parties the opportunity to participate in the rule making by submitting written data and

---

[6] The Hobbs Act states that the court of appeals has "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission" made reviewable by *47 U.S.C. § 402(a)*. *See 28 U.S.C. § 2342*. *47 U.S.C. § 402(a)* explains that any "proceeding to enjoin, set aside, annul, or suspend any order of the Commission" may be brought under the manner prescribed in *28 U.S.C. § 158* except for those listed in 28 U.S.C. § 402(b). *28 U.S.C. § 402(b)* further lays out a list of exceptions to this rule whereby decisions from the Commission may be appealed directly to the Court of Appeals for the District of Columbia, but none of those exceptions apply in this case. Therefore, the district courts are required to comply with such orders unless the order is reversed by the FCC or otherwise adjudicated by the court of appeals.

arguments, and (3) include "a concise general statement of [its] basis and purpose" in the text of the final rule. *Id. at 96*.

The FCC has statutory authority to "promulgate binding legal rules" to carry out the Communications Act of 1934 (which includes the TCPA). *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 980-81, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2006)*. That authority was delegated to the CGAB by the FCC and Congress. As for three (3) step notice and comment rulemaking procedure, there does not seem to be disagreement between the parties on steps two (2) and three (3). To fulfill step two, the CGAB issued a public notice seeking comment on the AFGL's petition for declaratory ruling under the TCPA. (*See* ECF No. 98-1 at 7.) Several entities and individuals filed their comments about the AFGL's petition, including Career Counseling, its proposed expert witness, and three (3) others opposing AFGL's petition. *Id.* (*See* ECF No. 206 at 23.) To fulfill step three (3), the CGAB wrote an introduction [*22] to the declaratory ruling, outlining their purposes of answering AFGL's petition and clarifying the language of the TCPA. (*See* ECF No. 98-1 at 1-3.)

The parties, however, disagree on whether the CGAB issued a general notice of proposed rulemaking to fulfill step one (1). Career Counseling argues that the CGAB's public notice for comment on the AFGL's petition "does not even come close to meeting the APA requirements" and that "no rule was ever published in the Federal Register or codified in the FCC's regulations." (ECF No. 211 at 17.) While the *Administrative Procedure Act, 5 U.S.C. § 553*, generally requires a notice of proposed rulemaking be published in the Federal Register, it makes an exception when "persons subject [to the proposed rule] . . . are either personally served or otherwise have actual notice thereof in accordance with law." *See id.* This "actual notice" must include (1) the time, place, and nature of public rule making proceedings, (2) reference to the legal authority under which the rule is proposed, and (3) the terms of the proposed rule or a description of the subjects and issues involved. *Id.* The public notice issued by the CGAB includes all of these requirements. *See Consumer and Governmental Affairs Bureau* [*23] *Seeks Comment on Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling Under the Telephone Consumer Protection Act of 1991*, CG Docket Nos. 02-278, 05-338, Public Notice, 32 FCC Rcd 5667 (2017). Therefore, the public notice did not need to be published in the Federal Register to meet the APA requirements.

*See 5 U.S.C. § 553*. Additionally, Career Counseling filed a comment against AFGL's petition in response to the public notice, meaning that Career Counseling did have knowledge of the proceedings and a chance to submit their opinion for consideration. (ECF No. 98-1 at 7.) This means that the CGAB did fulfill step one (1) of the notice and comment process, adequately giving public notice to all parties. Therefore, because the CGAB's declaratory ruling was issued by "an agency pursuant to statutory authority" and has "force and effect of law" from completing the three (3) step notice and comment rulemaking process, the ruling is legislative and not interpretive.[7] *PDR Network, 139 S. Ct. at 2055*.[8]

Lastly, the court finds that the CGAB's declaratory ruling is final. Under *47 C.F.R. § 1.102(1)*, non-hearing or interlocutory actions "taken pursuant to delegated authority" will be "effective upon release [*24] of the document containing the full text of such action" unless the designating authority orders otherwise. *Id.* Career Counseling has filed a petition for reconsideration of the CGAB's declaratory ruling (*see* ECF No. 139-2), and the FCC has the discretion to "stay the effect of its action pending disposition of the petition for reconsideration." *47 C.F.R. § 1.102(2)*. Even though the FCC has the authority to stay the CGAB's ruling, it has not yet done so and neither has Career Counseling specifically requested a stay on the ruling while the appeal is being processed. Therefore, it stands to reason that under *47 C.F.R. § 1.102(1)*, the CGAB's ruling is in effect until the FCC says otherwise in response to an appeal.[9]

---

[7] Career Counseling's arguments about deference under *Skidmore* assume that the CGAB's ruling is interpretive and not legislative. (*See* ECF 197-1 at 19-20). As the court finds that the ruling is legislative, this analysis does not apply.

[8] Career Counseling points out that the United States Supreme Court ruled in *PDR Network* that a different FCC ruling was interpretive instead of legislative. However, in that case, both parties conceded that the rule was interpretive, negating the need for extensive analysis. Additionally, the Supreme Court in *PDR Network* relied heavily on the absence of a notice and comment period, whereas the rule in question in this case followed a much different process and did have a notice and comment period initiated by a public notice for comment on the issue. Therefore, the ruling that the relevant sections of the FCC rule was interpretive in *PDR Network* does not contradict the legislative status of the CGAB's ruling in this case.

[9] Career Counseling argues that because a bureau decision must be appealed to the FCC before it can be appealed in the courts, citing *47 U.S.C. § 155(c)(7)*, and that this is a condition precedent for judicial review under the Hobbs Act, the order is

As a result of the foregoing, the court is required to find that the CGAB's declaratory ruling is entitled to Hobbs Act deference. If there is a putative class in this case, it will not have class members who received a fax from AFGL by means of an online fax service.

*2. Motion for Class Certification*

**a. Federal Rule of Civil Procedure 23(a)**

Upon consideration, the court is persuaded that Career Counseling satisfies Rule 23(a)'s enumerated requirements of "numerosity," "commonality," "typicality," and "adequacy." *See* Fed. R. Civ. P. 23(a). More specifically, the court observes **[*25]** that numerosity is satisfied because there are an estimated 20,989 members in the alternative Class B, who allegedly received faxes to their stand-alone fax machines in violation of the TCPA, as amended by the JFPA. (ECF No. 197-10 at 5 ¶ 13.) Plainly, such a large number makes joinder impracticable.

Second, commonality is satisfied because this factor of Rule 23(a) "requires the plaintiff to demonstrate that the putative class members 'have suffered the same injury.'" Thomas v. FTS USA, LLC, 312 F.R.D. 407, 417 (E.D. Va. 2016) (citation omitted). The court is persuaded that Career Counseling's general claim regarding its receipt of an unsolicited fax to a stand-alone fax machine is not different from the claims of the absent class members.

Third, typicality, which is similar to commonality, is satisfied here because Career Counseling and the putative class have an interest in prevailing in similar legal claims. Nolan v. Reliant Equity Partners, LLC, 08-cv-062, 2009 U.S. Dist. LEXIS 69765, 2009 WL 2461008, at *3 (N.D. W. Va. Aug. 10, 2009). All class members, including Career Counseling, must eventually establish that they received unsolicited faxes from AFGL to a stand-alone fax machine.

Fourth, adequacy of representation is satisfied here. Despite AFGL's protestations to the contrary, Career Counseling appears to be capable of fairly and adequately representing the interests of **[*26]** the putative class members who received a fax to a stand-alone fax machine.

___

not final. (*See* ECF No. 211 at 17.) However, there is no legal precedent to suggest this concern outweighs the clearly defined statutory process. *See* 47 U.S.C. § 155.

However, implicit within Rule 23 is the "requirement that the members of a proposed class be 'readily identifiable.'" Krakauer, 925 F.3d at 655 (quoting EQT Prod. Co., 764 F.3d at 358). In other words, members of a class must be ascertainable. This does not mean every member of the class needs to be identified at the time of certification; rather, that there must be a "administratively feasible [way] for the court to determine whether a particular individual is a member" at some point. Id. at 658. The burden is on the plaintiff as the party moving to certify the class.

In this case, Career Counseling must prove that a class of all persons or entities who were successfully sent the fax in question to a stand-alone fax machine is ascertainable. (ECF No. 197-1 at 1.) To accomplish this task, Career Counseling started with the 58,944 numbers to which the fax in question was sent. (*Id* at 5.) From there, Career Counseling issued subpoenas to Local Number Portability Administrator of the Number Portability Administrative Center to identify all phone carriers for all phone numbers on the list. (ECF No. 197-10 at 1.) Next, they used the responses to subpoena each identified phone carrier **[*27]** to determine whether the subscriber of each phone number was utilizing "online fax services" on the date of the faxing.[10] (*Id.*) Based on the replies to their subpoenas, Career Counseling asserts the following:

> 1. As of March 16, 2021, 20,989 numbers on the original list of numbers that were sent a fax were not provided an online fax service from their phone carrier (*id.* at 4); and
>
> 2. As of March 16, 2021, 206 numbers on the original list of numbers that were sent a fax were provided an online fax service from their phone carrier. (*Id.*)

In this regard, Career Counseling argues that at least 20,000 numbers were not using an online fax service from their phone carrier at the time the faxes were sent "and thus received the Fax on a stand[-]alone fax machine." (ECF No. 211 at 22.) Therefore, according to Career Counseling, the alternative Class B of at least 20,989 members is ascertainable.

In Sandusky Wellness Ctr., LLC v. ASD Specialty

___

[10] The phone carrier subpoenas asked two questions of the phone carriers about each number. First, did the carrier provide an online fax service to that telephone number. Second, can the carrier provide the names and addresses for each number. (*See* ECF No. 197-10.)

*Healthcare, Inc.*, 863 F.3d 460, 471 (6th Cir. 2017), the Sixth Circuit opined that "where fax logs[11] have existed listing each successful recipient by fax number, . . . such a 'record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement.'" *Id.* (quoting *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014)). Referencing *Sandusky* and its progeny, Career Counseling **[*28]** asserts that its proposed Class B is ascertainable because it presented fax logs in support of its Motion for Class Certification containing "the list of the names, addresses, and fax numbers" to the "stand-alone fax machine recipients."[12] (ECF No. 197-1 at 24-25.) The following are exemplars of the fax logs relied on by Career Counseling:



(*See* ECF No. 199.) Career Counseling argues that these fax logs are objective data of successful, completed fax transmissions thereby satisfying the ascertainability element for class certification. (ECF No. 197-1 at 25.)

In contrast to the aforementioned, AFGL presents several Declarations to demonstrate that Career Counseling's proposed Class B does not satisfy the ascertainability requirement. In the first such Declaration, attorney Whitney M. Smith asserts there are 4,000 numbers in Class B that are associated with Verizon as the telephone carrier and Verizon "does not have information available to allow it to determine whether the customer associated with the telephone numbers used the number with a fax . . . service." (ECF No. 206-1 at 3 ¶ 10.) In the Second Declaration of Tammy Deloach, a paralegal at Charter Communications **[*29]** Operating, Inc. observes that 1,291 of the phone numbers in the fax log belong to subscribers of Charter and it "is unable to determine whether a VOIP number assigned to a customer account is utilized for voice calls or fax transmissions . . . . cannot determine whether a VOIP subscriber used another provider's online fax service product . . . . [and] does not have a mechanism by which it can identify how a subscriber is using its voice service, including whether a subscriber procured online fax service from a third

---

[11] For a document to operate as a fax log, it should provide "the date, time, number of pages, destination fax number, and whether the transmission was successful." FaxAuthority, *What is a Fax Log*?, https://faxauthority.com/glossary/fax-log/ (last visited July 13, 2021).

[12] There does not appear to be an on point Fourth Circuit opinion as to this issue. This court is not convinced that the Fourth Circuit would agree with the Sixth Circuit's position that a fax log fulfills the ascertainability requirement. Ascertainability in the Sixth Circuit is an implied requirement for Rule 23(b)(3) classes (*see Sandusky*, 863 F.3d at 466) while ascertainability in the Fourth Circuit is a threshold requirement of all Rule 23 classes. *See EQT Prod. Co.*, 764 F.3d 347 at 358. To this point, the Fifth Circuit has found that even with a fax log, the individual inquiry into each recipient on the list made class certification inappropriate. *See Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008).

party or was using a stand-alone fax machine or any other technology to receive faxes." (ECF No. 225-1 at 2-3 ¶ 9.) Finally, in the Declaration of Lisa Likely, the Director for AT&T Corp. states that 12,874 of the numbers on the fax log belong to AT&T subscribers and AT&T cannot identify whether the subscriber used "a stand-alone fax machine or any other technology to receive faxes" or "confirm whether a subscriber received . . . a fax or used a fax machine." (ECF No. 226-1 at 3 ¶¶ 14, 15.)

To certify Career Counseling's proposed Class B, the court must find that the ascertainability requirement is established by a preponderance of the evidence. *E.g.,* [*30] *E&G, Inc. v. Mount Vernon Mills, Inc., C/A No. 6:17-cv-318-TMC, 2019 U.S. Dist. LEXIS 148890, 2019 WL 4034951, at *3 (D.S.C. Aug. 22, 2019)* ("A plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under *Rule 23*." (citing *Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)*)). More specifically, the fax logs must convey that the fax was successfully received by the recipient. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc., 2016 U.S. Dist. LEXIS 1864, 2016 WL 75535, at * (N.D. Ohio Jan. 7, 2016)* ("[O]nly persons to whom faxes were 'successfully sent' are proper claimants under the TCPA." (citing *Imhoff Inv., LLC v. Alfoccino, Inc., 792 F.3d 627, 632-34 (6th Cir. 2015)*; *Am. Copper, 757 F.3d at 545*))).

In the Fourth Circuit, class certification is inappropriate when "class members are impossible to identify without extensive and individualized fact-finding" as it needs to be administratively feasible for the court to determine which individuals are members of the class. *EQT Prod. Co., 764 F.3d at 358*. In considering the totality of evidence presented by the parties, the court is not persuaded that a predominance of the evidence supports finding that a fax designated as successfully sent on Career Counseling's fax logs reached a stand-alone fax machine.[13] More specifically, if the purpose of TCPA/JFPA is to address a consumer's loss of paper and toner, the aforementioned fax logs are deficient because they do not show that a device using toner and paper received the successfully sent fax. The court finds that it would need to make [*31] an individualized inquiry of each class member to determine if the fax number identified in the fax log actually was linked to a stand-alone fax machine on June 28, 2016. Because such individualized inquiries are necessary to ascertain the class, Class B is not ascertainable, and class certification is inappropriate. Accordingly, the court finds that Career Counseling cannot satisfy all of the requirements of *Rule 23(a)*.

**B. *Federal Rule of Civil Procedure 23(b)(3)***

Because Career Counseling cannot satisfy all of *Rule 23(a)*'s requirements, consideration of whether it meets *Rule 23(b)*'s requirements of predominance and superiority is futile.

*3. Motion to Appoint Career Counseling Class Representative*

Because the court did not certify a putative class, Career Counseling's pending Motion to Appoint It Class Counsel is now moot.

*4. Motion to Appoint Class Counsel*

As a result of its decision to deny the Motion for Class Certification, the court finds the Career Counseling's Motion to Appoint Class Counsel is moot.

**V. CONCLUSION**

Upon careful consideration of the entire record and the parties' arguments, the court hereby **DENIES** Plaintiff Career Counseling, Inc.'s Motion for Class Certification (ECF No. 197). Further, the court **DENIES AS MOOT** Career Counseling, [*32] Inc.'s Motion to Appoint Class Counsel and Motion to Appoint Class Representative. (*Id.*)

**IT IS SO ORDERED**.

/s/ J Michelle Childs

United States District Judge

July 16, 2021

Columbia, South Carolina

---

[13] The Sixth Circuit also explained in *Lyngaas* that fax logs which showed receipt of the fax were enough to meet the ascertainability requirement because the court could determine which individuals received the fax. *Lyngaas v. Ag, 992 F.3d 412, 430 (6th Cir. 2021)*.

**End of Document**

Alyssa Johnson